[Crim. No. 539. First Appellate District.—February 9, 1915.]

THE PEOPLE, Respondent, v. A. L. HUNT, Appellant.

CRIMINAL LAW—MANSLAUGHTER—SUFFICIENCY OF INFORMATION.—In this prosecution for the crime of manslaughter it is held, upon the authority of *People* v. *Pearne,* 118 Cal. 154, that the information was sufficient.

ID.—EXAMINATION OF JURORS AND WITNESSES BY JUDGE—WHEN NOT PREJUDICIAL.—It is further held that the trial judge was not guilty of misconduct in examining jurors upon their *voir dire* as to their qualifications or in the examination of witnesses during the trial with the view of elucidating certain facts touched upon but not fully brought out by questions of respective counsel.

ID.—EVIDENCE—DIPLOMAS OF DEFENDANT—LACK OF ERROR IN EXCLUDING.—Where defendant, who was an osteopathic physician, was being prosecuted for the crime of manslaughter for causing the death of a married woman by an unlawful operation attempted for the purpose of procuring an abortion, there was no substantial error in excluding from evidence the diplomas of the defendant as a graduate of several colleges, where it had already appeared that the defendant was a duly licensed osteopathic physician.

ID.—RIGHT OF PERSONS OTHER THAN LICENSED SURGEONS TO PERFORM OPERATIONS.—The right of persons to perform or attempt to perform surgical operations upon others in the honest and reasonable belief that such operations are necessary in order to save the life of those needing such ministrations, is not confined to those who are licensed by the state to perform surgical operations of the nature of that attempted in this case. No person actuated by the reasonable belief, based upon the circumstances, that such an operation is necessary to save life, and who acts with due caution and circumspection in the performance of said operation can be held guilty of manslaughter.

ID.—ERRONEOUS INSTRUCTIONS—WHEN NOT PREJUDICIAL.—In such a case it was error to instruct the jury that, "It is unlawful for any person, not a regularly licensed physician or surgeon, to operate upon or in any manner sever or penetrate any of the tissues of human beings,

except the severing of the umbilical cord"; but it is held that the giving of such instruction was not reversible error when considered with the instructions as a whole.

ID.—FAULTY INSTRUCTIONS—WHEN NOT PREJUDICIAL.—In this case the instructions to the jury were faulty in the omission to inform the jury that if the defendant believed, and as a reasonable person, under the circumstances of the case as presented to him at the time, had reasonable cause to believe, that the attempted operation was necessary to save the life of the deceased, and that if, acting upon such belief, he attempted to perform the operation in question, and acted with due caution and circumspection, in so doing, he would not be guilty of manslaughter; and that whatever reasonable doubt the jury might have upon the subject they were to resolve in favor of the defendant; and said instructions were erroneous in the charge that the defendant was not, as an osteopathic practitioner licensed to perform major operations, and that if he did attempt to perform such an operation upon the deceased, as the result of which her death occurred, he would be guilty of manslaughter.

ID.—ERRONEOUS INSTRUCTIONS—FAILURE TO PROPOSE CORRECT ONES— WAIVER OF ERROR—WHEN COURT NOT REQUIRED TO AMEND.—In such a case, if the defendant had proposed proper instructions upon the points, the giving of the erroneous instructions would have been prejudicial; but where his proposed instructions omitted the element that the defendant must have believed, and have been entitled as a reasonable man under all the circumstances, to have believed that the operation was necessary in order to save the life of the deceased, before he would have been justified in attempting to perform it, whether he was a duly licensed surgeon or not, the court was justified in refusing the proferred instructions; and the court was not called upon to amend the instructions in this regard where there was no evidence before the jury which would have warranted a finding that the defendant acted with due or any caution or circumspection in the attempted performance of the operation, but on the contrary the evidence affirmatively showed that the defendant acted with utter lack of skill, caution, and circumspection.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. Benjamin F. Bledsoe, Judge presiding.

The facts are stated in the opinion of the court.

Burns & Watkins, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

RICHARDS, J.—This is an appeal from the judgment upon conviction of the defendant of the crime of manslaughter, and from an order denying a new trial.

The first contention of the appellant is that the information is insufficient, and that the general and special demurrer thereto should have been sustained. This contention as presented in the demurrer is twofold: 1. That the information is not in the language of the statute; and, 2. That it is uncertain in that the defendant was not enabled to know therefrom whether he was being prosecuted for voluntary or involuntary manslaughter; and if for the latter, whether he was charged with manslaughter in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner, or in the commission of a lawful act without due caution or circumspection.

Counsel for the appellant argue quite strenuously and forcibly both in their opening and closing briefs in support of this contention, citing cases from other jurisdictions to sustain their view. We think, however, that the ruling of this court is controlled by the case of *People* v. *Pearne,* 118 Cal. 154, [50 Pac. 376], wherein the supreme court has held an information in substantially the same language and form as that in this case to be sufficient.

The next contention of the appellant is that the court erred in denying the defendant's challenge to the juror Carl S. Poulsen for actual bias. This contention is involved in the further contention of the appellant that the judge of the court, during the examination of the jurors and the trial of the case, was guilty of misconduct prejudicial to the rights of the defendant, and that such misconduct consisted in the judge of the court undertaking to question jurors upon *voir dire* examination as to their qualifications, and also in the questioning of witnesses during the trial respecting certain essential elements and issues in the case. It is the contention of the appellant that the judge of the court by so doing placed himself in the attitude of a prosecutor to such an extent as to indicate to the jury that he was prejudiced against the defendant and that his sympathies were with the prosecution.

We have examined the record in this case with great care in the light of these contentions, and in view both of the constitutional inhibition against the right of courts to charge

juries in regard to matters of fact, and of the express language of the supreme court in the early case of *People* v. *Williams,* 17 Cal. 147, followed in later cases, and especially commented upon and approved by this court in the recent case of *People* v. *Conboy,* 15 Cal. App. 97, [113 Pac. 703], wherein judges of trial courts have been repeatedly cautioned against the assumption of any attitude toward the parties or the evidence in the case which might tend to indicate to the minds of susceptible jurors the leaning of the judge in favor of or against either side. Upon such examination of this record we are unable to say that the judge who tried this case transgressed the proper limits of judicial discretion in essaying to put to the above-named juror certain questions touching upon his qualifications, and which resulted in what we hold to be a proper denial of the defendant's challenge of said juror for bias. Neither are we able to say that the judge overstepped the proper bounds of his judicial province in essaying on his own account to pursue the examination of certain witnesses in the cause beyond the distance gone upon their direct and cross-examination, with a view to elucidating certain facts touched upon but not fully brought out by questions of the respective counsel. Our attention has been called to no single question asked by the judge of the court either of a juror or of a witness, which was properly subject to any objection other than the objection that it was being asked by the judge instead of by counsel. In addition to this the record shows that at once upon the defendant's counsel making their first objection to the court's action, the judge directly and emphatically disclaimed any leaning upon his part in favor of or against either side, and instructed the jury that they were not to consider the questions put by him as indicating in any degree the interest or attitude of the judge of the court; and the court further, in its charge to the jury, again instructed them to the same effect. Presumably the jury regarded these instructions; and this being the state of the record, we are constrained to hold that the action of the court in the foregoing respects was without prejudicial error to the defendant.

With respect to the other alleged errors of the court during the examination of jurors, we think the contention of the appellant to be without merit. We are also of the opinion that the objections to the defendant to the rulings of the court upon questions put to Drs. Couey, Hopkins, and Maupin, can-

not be sustained. As to the action of the court in refusing to admit in evidence the diplomas of the defendant as a graduate of several colleges, and especially of the Los Angeles College of Osteopathy, we think there was no substantial error, especially since it had already affirmatively appeared in evidence that the defendant was a duly licensed osteopathic physician.

The next and most serious contention of the appellant is that the court erred in giving certain instructions to the jury, and in refusing to give certain other instructions requested on behalf of the defendant. In order to determine the issues raised by these contentions it is necessary to briefly review the facts of the case.

The defendant was charged with manslaughter in having caused the death of a married woman named Florence Saier. The evidence showed that the deceased, who, before her marriage bore the name of Florence Williams, was of the age of about twenty-one years, and that she had been residing for several months prior to her death in Merced County, where she had become acquainted with one Peter Saier, with whom on several occasions she went riding on a motor cycle. On one of these trips she was thrown from the machine and severely injured; and after being confined to her bed in Merced for a period of about ten days under the care of a physician and nurse, it was discovered that she was advanced in pregnancy about five months, and that Peter Saier was the cause of this condition. An immediate marriage with Saier was arranged for and consummated, whereupon the woman was removed to the home of her sister, Mrs. Leona Brown, in Fresno, where she remained for several days in a sick and suffering condition, complaining of pains in her back, stomach, abdomen, and sides, and during a portion of which time she had a considerable flow of blood from the vagina. This condition continuing for several days, and apparently increasing, her sister, Mrs. Brown, became alarmed, and called in the defendant, who was then engaged in practicing as an osteopathic physician in Fresno. When the defendant came to see the deceased he was informed of her condition, and of the facts of her fall from the motor cycle and subsequent suffering. He gave her a hypodermic injection to quiet her, and then declared to Mrs. Brown that he was not the doctor for the case, but that a surgeon should be called in. There is evidence tending to show that an effort was made to secure the

attendance of one or more regular physicians but without result, probably owing to the fact that it was night time. Finally and in view of Mrs. Brown's increasing alarm and insistence that he remain, the defendant said that he would do what he could to help the suffering woman. He then went away, returning in about half an hour with a valise; and after requesting Mrs. Brown to furnish hot water and towels, was alone with the deceased for another half hour, at the end of which time he reappeared, stating to Mrs. Brown that he could do nothing for her sister, and that she must have a surgeon and be taken to some place where she would receive proper attention. He then went out in search of other doctors, and finally procured Dr. Couey to come to the apartments where the deceased was at about 2 o'clock in the morning. Upon his arrival Dr. Couey had the woman at once taken to a hospital, where she was examined by Drs. Couey and Maupin. They found her suffering from internal injuries which could only be reached by abdominal incision, which being made exposed the fact that a shockingly unskillful operation had been attempted for the manifest purpose of procuring an abortion, but in the course of which vital organs had been so severed and injured that it was not likely that the patient could survive. She in fact died within the next two days from the effects of the operation which the defendant had attempted to perform.

The foregoing facts were elicited upon the trial. The defendant did not take the witness stand, nor was there any evidence offered on his behalf or otherwise, tending in any degree to show that the operation was performed with due or any caution or circumspection.

In its charge to the jury the court gave the following four instructions of which the appellant complains:

(1) "It is unlawful for any person, not a regularly licensed physician or surgeon, to operate upon or in any manner sever or penetrate any of the tissues of human beings, except the severing of the umbilical cord."

(2) If you find from the evidence beyond reasonable doubt that the defendant, A. L. Hunt, did, at the time and place set out in the information, perform or attempt to perform an operation upon the person of Florence Saier for the purpose of delivering an unborn child, but that the operation or attempted operation was performed without due caution and

circumspection, or, if you are satisfied beyond a reasonable doubt that the delivering of such unborn child was not necessary to save the life of Florence Saier, and you should also find and believe beyond a reasonable doubt that death resulted to said Florence Saier as the result of such operation so performed, then you should find the defendant guilty as charged.''

(3) ''You are further instructed that the proofs in this case show that the defendant, A. L. Hunt, is a fully licensed osteopathic practitioner, but is not licensed to administer drugs or practice major surgery. And, if you find from the evidence that he did, in an attempt to deliver an unborn child from the body of Florence Saier during her lifetime, and for that purpose performed or undertook to perform a major surgical operation for the purpose of so delivering said child, and if you further find that death resulted to said Florence Saier as the result of said operation, then it is your duty to find the defendant guilty as charged in the information.''

(4) ''If you should find from the evidence in this case to a moral certainty and beyond a reasonable doubt, that the defendant, A. L. Hunt, did, on or about the 6th day of April, 1914, in the county of Fresno, state of California, knowingly and intentionally perform or attempt to perform an operation upon Florence Saier while she was pregnant, for the purpose of causing her a miscarriage, when such operation was not necessary to save her life, and that by reason of such operation said Florence Saier died, it is your duty to find the defendant guilty as charged. You are also instructed, gentlemen, that, if it be true that Florence Saier was pregnant, and from some previous injury or cause was about to have a miscarriage, and the defendant as a physician was called upon to attend, and did attend said Florence Saier, and undertook to aid her and assist her in her impending miscarriage, and while engaged in the performance of such service, performed the same with such want of due caution and circumspection that said Florence Saier died, the defendant would be guilty as charged, provided he acted with gross ignorance of his art or with gross inattention to his patient's safety, or with such neglect or lack of care for her safety and welfare as shows upon his part an indifference as to whether she recovered at all.''

It is conceded by the respondent that the first of these instructions is erroneous as embracing a legal proposition

entirely too broad for the facts of this case; but the respond-
ent contends that the instructions of the court should be con-
sidered as a whole, and when so considered the first of the fore-
going instructions becomes *innocuous;* and further, that the
instructions as a whole fairly set forth the several theories of
the case upon any one of which the prosecution was entitled
to rely for a conviction.

As to the first of the above instructions, this view is prob-
ably permissible, although the giving of instructions of that
character is not to be regarded with favor. As to the three
succeeding instructions, when read together they will be found
faulty in two main respects: the first of these consists in the
omission to inform the jury that if the defendant believed, and
as a reasonable person, under the circumstances of the case as
presented to him at the time, had reasonable cause to believe
that the attempted operation was necessary to save the life
of the deceased, and that if, acting upon such belief, he at-
tempted to perform the operation in question, and acted with
due caution and circumspection, in so doing, he would not be
guilty of manslaughter; and that whatever reasonable doubt
the jury might have upon this subject they were to resolve in
favor of the defendant. The second error in these instructions
consists in the charge that the defendant was not, as an osteo-
pathic practitioner, licensed to perform major operations; and
that if he did attempt to perform such an operation upon the
deceased, as the result of which her death occurred, he would
be guilty of manslaughter. This is not a correct statement of
the law. The right of persons to perform or attempt to per-
form surgical operations upon others, in the honest and rea-
sonable belief that such operations are necessary in order to
save the life of those needing such ministrations, is not con-
fined to those who are licensed by the state to perform surgical
operations of the nature of that attempted in this case. Any
person actuated by the reasonable belief, based upon the cir-
cumstances, that such an operation is necessary to save life,
and who acts with due caution and circumspection in the per-
formance of such operation, cannot be held guilty of man-
slaughter. We think the foregoing instructions were erro-
neous in both the above respects; and that had the defendant
asked for a proper instruction covering these points, and had
there been any evidence tending to show that the defendant
acted with due or any caution and circumspection in the per-

formance of the operation in question, there can be little doubt but that the foregoing erroneous instructions would have entitled the defendants to a reversal of the judgment and a new trial in the case. The defendant did in fact request several instructions apparently intended to cover the two particular points in which the above instructions given by the court were defective; but each of the instructions asked by the defendant is also defective in the omission of an essential element, which is that the defendant must have believed and been entitled as a reasonable man under all of the circumstances to have believed that the operation was necessary in order to save the life of the deceased, before he would have been justified in attempting to perform it, whether he was a duly licensed surgeon or not. The omission of this essential element would have been sufficient to have justified the court in its refusal to give the instructions of the defendant in the form in which they were requested. Whether or not the court should of its own motion have amended these instructions of the defendant in the above respects, it is not necessary under the facts of this case to decide, for the reason that there was no evidence whatever before the jury which would have warranted a finding that the defendant acted with due or any caution or circumspection in the attempted performance of the operation in question; or which would have justified the jury or any member thereof in entertaining a reasonable doubt upon this branch of the case; but on the contrary, the evidence affirmatively and indisputably shows that the defendant, in his attempted performance of the operation in question, acted with a shocking degree of unskillfulness, evincing an almost incredible ignorance of surgery and anatomy, and utterly wanting in those elements of skill, caution, and circumspection which the law requires and which should invariably attend upon such an operation. These being the undisputed facts and uncontradicted proofs in the case, the errors of the court in giving the instructions to which the defendant has objected become immaterial; as does also the failure of the court, if the same be error, to have amended and then given instructions covering the points ineffectively presented in the requested instructions of the defendant; and this for the reason that in any event it would have been the duty of the jury to have found the defendant guilty of manslaughter, and for the jury to have failed to have performed this duty in this

case would have clearly amounted to a miscarriage of justice. This being so, it becomes our duty to sustain the verdict of the jury.

The judgment and order are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 11, 1915, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 8, 1915.