[Crim. No. 965.   Second Appellate District, Division Two.—September 1, 1923.]

## THE PEOPLE, Respondent, v. FRANK B. GOLSH, Appellant.

[1] CRIMINAL LAW—MURDER—INTENT TO KILL—EVIDENCE—INFERENCE. In a prosecution for murder, it is not necessary that there should be express evidence of a deliberate purpose to kill; it may be inferred from such facts and circumstances in the case as reasonably warrant an inference of its existence.

[2] ID.—VERDICT—EVIDENCE—APPEAL.—In a prosecution for murder, a verdict finding the defendant guilty of first degree murder cannot be disturbed on appeal where the evidence was conflicting, and was substantial to support the verdict.

63 Cal. App.—39

[3] ID. — EVIDENCE — SUNSTROKE SUFFERED BY DEFENDANT PRIOR TO HOMICIDE.—In a prosecution for murder, evidence that defendant suffered a sunstroke about a year and a half prior to the homicide was not admissible for the purpose for which it was received by the trial court, namely, to enable the jury to determine whether the death penalty or life imprisonment should be imposed in the event that defendant should be found guilty of murder in the first degree; nor was it admissible for the purpose for which it was offered, to wit, to show that by reason of the sunstroke a sudden quarrel would more readily excite in defendant a blinding passion than would be the case with the average man.

[4] ID.—REDUCTION OF HOMICIDE TO MANSLAUGHTER — CHARACTER OF PROVOCATION.—The provocation which will stir in the heart of the slayer that heat of passion which reduces the homicide from murder to manslaughter must be such as would have a like effect upon the mind and emotions of the average man—the man of ordinary self-control.

[5] ID.—EXAMINATION OF WITNESSES BY TRIAL JUDGE — POWER AND DUTY OF TRIAL COURT.—The duty of a trial judge, particularly in criminal cases, is more than that of an umpire; and though his power to examine the witnesses should be exercised with discretion and in such a way as not to prejudice the rights of the prosecution or the accused, still he is not compelled to sit quietly by and see one wrongfully acquitted or unjustly punished when a few questions asked from the bench might elicit the truth. It is his primary duty to see that justice is done both to the accused and to the people.

[6] ID.—INDEPENDENT EXAMINATION OF DEFENDANT BY JUDGE — ABSENCE OF PREJUDICIAL ERROR.—In a prosecution for murder, the action of the trial judge in conducting an independent examination of the defendant while he was a witness in his own behalf was without prejudicial error to the defendant, where no question asked by the trial judge was shown to have been properly subject to any objection other than that it was being asked by the court instead of by counsel, and where it cannot be said on appeal after an examination of the record that the trial judge transgressed the proper limits of judicial discretion in essaying to elicit from the witness all of the truth respecting the matters

3. Weakness of mind as affecting responsibility for homicide, note, 10 L. R. A. (N. S.) 999.

4. Condition of mind of slayer which reduces murder to manslaughter, notes, 134 Am. St. Rep. 726; 9 Ann. Cas. 929; 5 L. R. A. (N. S.) 818.

5. Power of court to examine witnesses in criminal cases, notes, 6 Ann. Cas. 477; 5 L. R. A. (N. S.) 878; L. R. A. 1916A, 1192.

as to which he had voluntarily testified in response to his counsel's questioning.

[7] ID.—FAILURE TO INSTRUCT UPON PERTINENT ISSUE — ABSENCE OF REQUEST FOR INSTRUCTION.—A defendant in a criminal case is in no position to complain of the court's failure to instruct upon a point, even though it be pertinent to an issue, where the instruction was not requested.

[8] ID. — DEFINITION OF TERM "LEGAL PROVOCATION" — FAILURE OF COURT TO GIVE—ABSENCE OF REQUEST.—In such prosecution, in the absence of a request therefor, the defendant cannot complain of the trial court's failure to define affirmatively the term "legal provocation."

[9] ID.—"COOLING TIME"—REQUESTED INSTRUCTION—PROPER REFUSAL OF.—In such prosecution, an instruction that "Cooling time, or that space of time which will be deemed sufficient for a man to cool after a conflict, may differ with different persons, according to the constitution of their nature. No uniform rule can be laid down as the length of time when a man shall have 'cooling time.' It is for the jury, under all the evidence, to decide as to the actual conditions of the mind of the actor," was properly refused.

[10] ID.—INSTRUCTION PARTLY ERRONEOUS—REJECTION OF WHOLE JUSTIFIED.—If any part of a single instruction should not have been given the action of the trial court in rejecting the whole will be affirmed.

[11] ID.—COOLING TIME—RULE.—"Cooling time" is not the time it would take an ideal man or the defendant, but the time it would take the average man or the ordinarily reasonable person, under like circumstances, to cool.

[12] ID. — CONVERSATION BETWEEN JURYWOMAN AND FATHER OF DECEASED—SUBJECT MATTER NOT DISCLOSED—JUDGMENT UNDISTURBED. In such prosecution, the fact that a jurywoman was seen talking to the father of the deceased in a highly excited manner and gesticulating violently does not call for a reversal of the judgment of conviction, in the absence of any showing as to the nature of the subject matter of the conversation.

[13] NEW TRIAL — CONTINUANCE — DISCRETION.—In such prosecution, where the affidavit of the defendant's wife, in support of his motion for a new trial upon the ground of newly discovered evidence, showed that following the preliminary hearing a witness for the prosecution, who testified at the hearing but who was absent from the state at the time of the trial, told her that just

12. Communications between jurors and others as ground for new trial or reversal in criminal case, notes, 134 **Am. St. Rep.** 1033; 22 **A. L. R.** 254.

13. Continuance to procure witness who is beyond jurisdiction, note, **L. R. A.** 1918E, 527.

before her husband fired the fatal shot he (the witness) saw a revolver in decedent's hand which had been drawn from its holster, and no motion for a continuance of the trial supported by such an affidavit was made, the defendant could not thus neglect to ask for a continuance of his trial, speculate upon obtaining a favorable verdict at the hands of the jury, and then complain because his motion for a new trial was not continued for a longer period than nine days to enable him to procure the affidavit of said witness.

[14] Id.—Procurement of Affidavit — Reasonable Time—Absence of Showing.—In such prosecution, if it be assumed that the continuance for nine days was not sufficient to afford defendant a reasonable time within which to procure the affidavit of the absent witness, still no prejudicial error is disclosed, since defendant made no showing of any fact or facts from which the trial judge could fairly have inferred that the affidavit could have been procured within a reasonable time.

[15] Id.—Argument—Misconduct.—A perfervid argument of counsel for the people is, alone, not sufficient to justify the granting of a new trial.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. Spencer M. Marsh, Judge. Affirmed.

The facts are stated in the opinion of the court.

Claude M. Shell for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant was convicted of murder in the first degree, the jury fixed his punishment at life imprisonment, he was sentenced accordingly, and he now appeals from the judgment and from the order denying his motion for a new trial.

Appellant's first point is that the evidence shows that the slaying, which was admitted, was committed upon a sudden quarrel and in the heat of passion, and that therefore it was at most but manslaughter and was lacking in the elements from which malice may be presumed. The testimony, as is usual in such cases, was more or less contradictory, and it only need be said that there was evi-

dence which, if credited by the jury, demanded from them the verdict rendered. Appellant's counsel insists that the version of the homicide as given by certain of the people's witnesses was improbable and in contradiction of other testimony in the record. A consideration of all of the evidence shows that the facts as described by these witnesses were not inherently impossible. The jurors were the sole judges of the degree of credit to be given the testimony. [1] It was not necessary that there should be express evidence of a deliberate purpose to kill. It may be inferred from such facts and circumstances in the case as reasonably warrant an inference of its existence. (*People* v. *Machuca,* 158 Cal. 64 [109 Pac. 886].) If the people's witnesses told the truth there can be no question that a cruel and deliberate murder was committed. [2] As there was substantial evidence to support the verdict, and it is not within our province to pass upon the evidence where it is conflicting, the verdict finding defendant guilty of first degree murder cannot be disturbed.

Appellant complains of the admission in evidence of a letter written by him shortly after his arrest. Unfortunately for this position defendant's counsel, when the letter was offered by the prosecution, expressly stated that he made no objection to its introduction.

Defendant offered to show that by reason of a sunstroke suffered by him about a year and a half prior to the homicide a sudden quarrel would more readily excite in him a blinding passion than would be the case with the average man. The court admitted the evidence, but solely for the purpose of enabling the jury to determine whether the death penalty or life imprisonment should be imposed in the event that defendant should be found guilty of murder in the first degree. Defendant did not contend that he was insane—the defense of insanity was expressly disclaimed by him. What he did claim was that the evidence of sunstroke and its consequent effect upon his mental and emotional nature should be received and considered by the jury as having a bearing upon his contention that the killing was done in the heat of passion and that at most his crime was manslaughter and not murder. [3] The evidence was not admissible for the purpose for which it was received (*People* v. *Witt,* 170 Cal. 110 [148 Pac.

928]); nor was it admissible for the purpose for which it was offered. [4] The provocation which will stir in the heart of the slayer that heat of passion which reduces the homicide from murder to manslaughter must be such as would have a like effect upon the mind and emotions of the average man—the man of ordinary self-control. (*People* v. *Hurtado,* 63 Cal. 289; *Commonwealth* v. *Cleary,* 148 Pa. St. 26 [23 Atl. 1110]; *Rex* v. *Lesbini,* [1914] 3 K. B. 1116, 7 B. R. C. 272, and note. See, also, *People* v. *Bruggy,* 93 Cal. 480 [29 Pac. 26]; *People* v. *Worthington,* 122 Cal. 586, 587 [55 Pac. 396], and *People* v. *Logan,* 775 Cal. 45 [164 Pac. 1121].) In the Hurtado case the trial court refused to instruct the jury that if a defendant accused of murder be not insane in the legal sense of the term he nevertheless should be found guilty of manslaughter only "if at the time he was laboring under such a mental unsoundness as to cause him to be easily aroused to a sudden heat of passion." In holding that the instruction was properly refused our supreme court said: "If defendant was so far in possession of his mental faculties as to be capable of knowing that the act of killing was wrong, any partial defect of understanding which might cause him more readily to give way to passion than a man ordinarily reasonable cannot be considered for any purpose. To reduce the offense to manslaughter the provocation must at least be such as would stir the resentment of a *reasonable* man. It cannot be urged that the homicide is manslaughter because it was committed in an unreasonable fit of passion. In an abstract sense anger is never reasonable; but the law, in consideration of human weakness, makes the offense manslaughter when it is committed under the influence of passion caused by an insult or provocation sufficient to excite an irresistible passion in a reasonable person, one of *ordinary* self control." (63 Cal. 292.) (Italics ours.)

The next assignment of error is that the court conducted an independent examination of the accused while he was a witness in his own behalf. [5] The duty of a trial judge, particularly in criminal cases, is more than that of an umpire; and though his power to examine the witnesses should be exercised with discretion and in such a way as not to prejudice the rights of the prosecution or the accused, still he is not compelled to sit quietly by and see one wrong-

fully acquitted or unjustly punished when a few questions asked from the bench might elicit the truth. It is his primary duty to see that justice is done both to the accused and to the people. He is, moreover, in a better position than the reviewing court to know when the circumstances warrant or require the interrogation of witnesses from the bench. As was said by the Georgia court of appeals in *Hart* v. *State,* 14 Ga. App. 364 [80 S. E. 909]: "While great caution should be used in its exercise, the trial judge has the right, in his discretion, to question the witnesses during the progress of a trial, in order to elicit the truth, and this discretion will not be controlled except where it appears that the manner in which the judge exercised his right tended unduly to impress the jury with the importance of the testimony elicited, or would be likely to leave the jury to suppose that the judge was of the opinion that one party rather than the other should prevail in the case." (See, also, *People* v. *Hunt,* 26 Cal. App. 514 [147 Pac. 476].) [6] After a careful examination of the record before us we are unable to say that the learned judge who tried this case transgressed the proper limits of judicial discretion in essaying to elicit from the witness all of the truth respecting the matters as to which he had voluntarily testified in response to his counsel's questioning. Our attention has not been called to any question asked by the judge which was properly subject to any objection other than that it was being asked by the court instead of by counsel. The action of the court was, therefore, without prejudicial error to the accused.

Though carefully and correctly instructing the jury that certain enumerated facts would not amount to that provocation which reduces the crime to manslaughter, the court, it is claimed, failed *affirmatively* to define the term "legal provocation." Wherefore the point is made that the instruction as given was entirely negative and failed to point out the elements which constitute adequate provocation. But defendant made no request for an affirmative or comprehensive definition of provocation. If his counsel deemed it essential that the jury should be given a more elaborate definition it was his privilege and duty to request such an instruction. Section 1093 of the Penal Code makes it the duty of the court to charge the jury on any fact pertinent

to the issue "if requested by either party." **[7]** A defendant in a criminal case is in no position to complain of the court's failure to instruct upon a point, even though it be pertinent to an issue, where the instruction was not requested. (*People* v. *Lopez,* 21 Cal. App. 192 [131 Pac. 104].) If the rule were otherwise the trial judge would practically be required to instruct on every question which the accused might have the right to have submitted to the jury, without his attention being called to questions which counsel, alive to the interests of their clients, would think of and the trial judge would not. It would open the door for counsel to sit silently by and allow the court to commit error in failing to instruct on points which their duty to their client should prompt them to request. **[8]** The following cases support our conclusion that in the absence of a request therefor appellant cannot complain of the court's failure to define affirmatively the term "legal provocation": *People* v. *Haun,* 44 Cal. 96; *People* v. *Ah Wee,* 48 Cal. 237; *People* v. *Christensen,* 85 Cal. 568 [24 Pac. 888]; *People* v. *Balkwell,* 143 Cal. 260 [76 Pac. 1017]; *People* v. *Rogers,* 163 Cal. 476, 484 [126 Pac. 143]; *People* v. *Williams,* 184 Cal. 590, 594 [194 Pac. 1019].

**[9]** Appellant complains of a refusal to give a requested instruction on "cooling time." The instruction, as requested, was as follows: "Cooling time, or that space of time which will be deemed sufficient for a man to cool after a conflict, may differ with different persons, according to the constitution of their nature. No uniform rule can be laid down as the length of time when a man shall have 'cooling time.' It is for the jury, under all the evidence, to decide as to the actual conditions of the mind of the actor." The instruction was properly refused. **[10]** A part of the instruction misstates the law, and the rule is that if any part of a single instruction should not have been given the action of the court in rejecting the whole will be affirmed. (*People* v. *Davis,* 64 Cal. 440 [1 Pac. 889].) That part of the requested instruction which, if given, would have advised the jury that "cooling time" may differ with different persons "according to the constitution of their nature" is not a correct statement of the law. What is meant by the use of the words "according to the constitution of their nature"? Do they mean that each

individual has a disposition peculiar to himself? Do they mean that whilst one man is phlegmatic and cool, never acting except with deliberate purpose, another, by inherited or acquired tendencies or as the result of some accident which has induced a mental infirmity falling short of insanity in the legal sense, is passionate and irascible, the creature of impulse, whose hot flames will continue flaring up long after they would have subsided in the man of ordinary self-mastery? If this be the meaning of the phrase—and it would seem that counsel intended that such should be the significance to be attached to it—then it contravenes the doctrine as established in this jurisdiction by such cases as *People* v. *Bush,* 65 Cal. 129, 132, 133 [3 Pac. 590]. In that case our supreme court held that "cooling time" is the time in which an *ordinary* man, in like circumstances, would have cooled. [11] The rule approved by the majority of our courts is that "cooling time" is not the time it would take an ideal man or the defendant, but the time it would take the average man or the ordinarily reasonable person, under like circumstances. The supreme court of Oklahoma in *In re Fraley,* 3 Okl. 719, 722 [139 Am. St. Rep. 988, 990, 109 Pac. 295, 296], states the rule thus: "And the authorities are all agreed that the question is not alone whether the defendant's passion in fact cooled, but also was there sufficient time in which the passion of a *reasonable* man would cool. If, in fact, the defendant's passion did cool, which may be shown by circumstances such as the transaction of other business in the meantime, rational conversations upon other subjects, evidence of preparation for the killing, etc., then the length of time intervening is immaterial. But if, in fact, it did not cool, yet if such time intervened between the provocation and the killing that the passion of the *average* man would have cooled and his reason have resumed its sway, then still there is no reduction of the homicide to manslaughter." (Italics ours.) In *Small* v. *Commonwealth,* 91 Pa. St. 304, an instruction practically identical with that under consideration here was carefully considered and condemned as unsound.

[12] It seems that the jurors were allowed to separate during the trial, and it was shown by affidavits that a jurywoman was seen talking to the father of the deceased

in a highly excited manner and gesticulating violently. It does not appear that the conversation related to the case on trial. It therefore is not of itself a circumstance sufficient to raise a presumption that the juror was improperly influenced. It was of course a grave impropriety, exposing the juror to suspicion and reflecting upon the administration of justice, but in the absence of any showing as to the nature of the subject matter of the conversation we cannot say that it was legal misconduct calling for a reversal of the judgment. (*People* v. *Dunne,* 80 Cal. 34 [21 Pac. 1130]; *People* v. *Phelan,* 123 Cal. 551, 567, 568 [56 Pac. 424].)

[13] Appellant urges that the trial court erred in refusing to continue his motion for a new trial for two weeks to enable him to procure the affidavit of one Fred B. Bender. It seems that Bender was a witness for the prosecution at the preliminary examination and that when the case was tried in the superior court he was living in the city of Seattle, state of Washington. Because of Bender's absence from the state at the time of the trial counsel stipulated that the transcript of his testimony before the committing magistrate might be, and it was, read to the jury by the prosecuting attorney as a part of the people's case. Defendant moved for a new trial on the ground, among others, of newly discovered evidence. In support of his motion for a new trial on this ground he filed an affidavit by his wife wherein the latter stated that following defendant's preliminary examination Bender told her that just before her husband fired the fatal shot he (Bender) saw a revolver in decedent's hand which had been drawn from its holster. In view of the testimony which he thus expected to be able to elicit from Bender, defendant requested the court to continue his motion for a new trial for two weeks so as to afford him time within which to procure from Bender his affidavit as to the facts so revealed by the affidavit of defendant's wife. The court continued the motion for a new trial for nine days, but refused to grant a further continuance. The matter of allowing a continuance was one which rested in the sound discretion of the trial judge, and we cannot perceive that it was in anywise abused. Defendant's preliminary examination before the committing magistrate was concluded on July 17, 1922.

His trial in the superior court did not commence until October 2, 1922. There is no pretense that in the meantime he had not been fully informed by his wife of what Bender had told her after the preliminary examination. Assuming, therefore, that the evidence which defendant believed that Bender would give may be regarded as "newly discovered," within the meaning of subdivision 7 of section 1181 of the Penal Code, still the fact remains that if the affidavit of defendant's wife, presented in support of his motion for a new trial, had been presented before the trial in support of a motion for a continuance, it doubtless would have been granted. Defendant cannot thus neglect to ask for a continuance of his trial, speculate upon obtaining a favorable verdict at the hands of the jury, and then complain because his motion for a new trial was not continued for a longer period than nine days. **[14]** Moreover, if we may assume that the continuance for nine days was not sufficient to afford defendant a reasonable time within which to procure Bender's affidavit, still no prejudicial error has been disclosed, since defendant made no showing of any fact or facts from which the trial judge could fairly have inferred that Bender's affidavit could have been procured within a reasonable time. (*People* v. *Lewis,* 64 Cal. 401 [1 Pac. 490]; *People* v. *Breen,* 130 Cal. 78 [62 Pac. 408].)

Complaint is made of misconduct on the part of the district attorney. In the brief filed on behalf of appellant we are told that the prosecuting officer in the course of his argument to the jury referred to defendant as "a black-hearted murderer" and a "cold-blooded assassin." This assignment of error is not warranted by anything in the record before us. It contains naught of the argument before the jury. **[15]** Moreover, a perfervid argument of counsel for the people is, alone, not sufficient to justify the granting of a new trial. (*People* v. *Owens,* 132 Cal. 469 [64 Pac. 770].)

The gravity of the case has moved us to give painstaking consideration to the points advanced by appellant. A careful examination of the record reveals nothing in the way of substantial error. Defendant had a fair trial, and there is sufficient evidence to support the verdict.

The judgment and the order denying the motion for a new trial are affirmed.

Works, J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 29, 1923.

All the Justices concurred.