[Crim. No. 2367.   Third Dist.   Oct. 23, 1952.]

THE PEOPLE, Respondent, v. ABEL GUTIERREZ FLORES, Appellant.

John L. Brannely and Anthony J. Scalora for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SCHOTTKY, J. pro tem.—This is an appeal from a judgment entered upon a verdict finding appellant guilty of petty theft and burglary.

The information upon which appellant was tried and convicted was in two counts, the first count charging him with a violation of section 484 of the Penal Code in that on or about October 29, 1951, in Merced County, he feloniously took a portable Singer sewing machine, the personal property of Singer Sewing Machine Company, of the value of $149.50; that previously, on May 31, 1940, he had been convicted of grand theft, a felony, in the Superior Court of Sacramento County and served a term in a penal institution therefor. Count 2 of said amended information charged him with a violation of section 459 of the Penal Code in that on or about October 29, 1951, in the county of Merced, he wilfully entered the shop and building owned and occupied by the Singer Sewing Machine Company with the intent to commit theft.

One Louis Argandar was charged in a separate information with the same offenses. Appellant entered a plea of not guilty to both counts, and Argandar pleaded guilty to Count 1 and not guilty to Count 2. Both admitted the prior convictions. The two cases were consolidated for trial.

Appellant does not question the sufficiency of the evidence to support the judgment, but urges two grounds for reversal: First, that the trial court was guilty of prejudicial error; and second, prejudicial misconduct by the deputy district attorney. Before discussing these contentions we shall summarize briefly the evidence as shown by the record.

The evidence showed that at about 2:30 in the afternoon of October 29, 1951, appellant Flores and his codefendant Argandar entered the Singer Sewing Machine Shop located at 629 Seventeenth Street, Merced, California, where appellant asked to see some vacuum cleaner attachments; he was taken to the rear of the store, and Mrs. Dunn, the saleslady who conducted the demonstration, which took some 10 to 15 minutes, stood with her back towards the front of the store, while appellant stood facing her and the front of the store. During this time defendant Argandar remained at the front of the store where he admittedly took a portable sewing machine out of the display window, placed it under his coat, and left the store. Another employee, Barbara Michalek, was working at the button counter at the front of the store, but she did not follow Argandar's actions. Appellant Flores told Mrs. Dunn that he was unable to make the purchase because he did not have the money, but would return the following day; he then returned with her to the front of the store, and as appellant left, Mrs. Dunn noted that Argandar was no longer in the shop. One John Bradley looked into the display window as he was passing the store and observed Argandar taking the machine; he also testified that he observed Argandar leave the store in the company of another man. Bradley thereupon entered the store and alerted the women as to the taking of the machine; they notified the police, and about 20 minutes after the complaint was received Flores and Argandar were picked up by the police, in the near vicinity of the store. Defendants, in response to questioning, alleged that they were hitch-hiking to Fresno. On the way to the police station, defendants were identified as the two men who had been in the store earlier, but they denied any knowledge as to the missing sewing machine. At the police station, both men again denied knowledge of the machine, asserted that they were hitch-hiking to Fresno, and that they had no car. Flores reasserted his purpose in entering the store, and Argandar admitted being there with Flores, for no particular purpose. They were released from custody, and though they briefly escaped the surveillance of the officers assigned to follow them, they were soon brought under watch again, and at the outskirts of Merced Argandar was observed alighting from a taxicab and entering a parked 1939 Buick tudor sedan in which Flores was at the wheel. The Buick drove off towards Madera but was stopped by the police, who examined the trunk and found

the sewing machine, which was identified by its serial number as the one taken from the store, and three miniature metallic horses, plus a kodak movie camera to which was still attached a price tag of $44.50. The men were arrested. Bail for both was put up by appellant's brother. Subsequent to their arrest they occupied apartments in the same building in Fresno and they were seen together numerous times.

Both Flores and Argandar testified that they had not known each other prior to this incident, although they had seen each other around in Fresno. Appellant Flores' story was that he had been hitch-hiking from Stockton on that day when Argandar picked him up. They parked the car in Merced where they intended to have some refreshments; as they were going up the street they passed the Singer Sewing Machine Shop, appellant saw a vacuum cleaner in the window which reminded him of attachments he wanted for his mother's vacuum cleaner. He did not tell Argandar why he was going in the store, but they went in and the above-described events occurred. Appellant admitted having some $22 to $23 in his possession when he stated he could not afford the attachments. When he saw that Argandar had already left the store he assumed he would find him by the car, and did in fact meet Argandar a short distance therefrom, whence they went into a drugstore for a soda. When returning to the car they were apprehended. Flores knew nothing of the theft until after they were dismissed from the police station, at which time Argandar told him. When they left the police station both defendants entered a cab, which Flores directed to the bus depot, it being his intention to complete the trip to Fresno by bus. Flores left Argandar and the cab at the depot, but when appellant learned that the bus would not leave for an hour, he decided to return to Argandar's car and drive it back, which Argandar had told him he could do since Argandar intended to leave the car in Merced, hitch-hike to Fresno, and return later to pick up the car. Flores thought Argandar was leaving the car in Merced since Argandar denied to the police that he had a car. Appellant further testified that when he met Argandar on the highway it was unexpected, since he had planned to return the car in Fresno. He also said he did not know that the stolen sewing machine was in the trunk of the car. Appellant Flores denied telling the police, "You are trying to pin a rap of theft on me on that sewing machine," because he did not know about it at the time; he also denied

that the police had told him that a machine had been taken at the time he was identified by the saleslady in the Singer shop. Argandar's testimony corroborated Flores', and he also contended that he had purchased the camera and statuettes from a man in Stockton for the sum of $17.

Appellant contends that the trial judge improperly questioned witnesses, made improper remarks, erred in admitting statements of police officers, erred in admitting before the jury testimony and exhibit of the movie camera and the statuettes, and erred in admitting the testimony of one Officer Demes of the narcotics division of the Fresno district attorney's office concerning the actions and conduct of the two defendants after the date of the burglary.

Appellant asserts "that the trial judge entered very actively into the conduction of the trial of the People's case, and that the trial court, in many instances, figuratively shed the judicial robe, descended from the bench and joined shoulder to shoulder with the Deputy District Attorney in extensive examination of witnesses, as well as extended cross-examination of the defendant Flores." Appellant then proceeds to set forth a number of instances appearing in the record which he contends prejudiced him in the eyes of the jury and prevented him from having a fair trial . The record shows that appellant was represented at the trial by an able attorney of many years' experience, a former district attorney of Merced County, and that none of the questions asked by the court and none of the remarks of the court which are now so sharply criticized by appellant's present counsel, were objected to, or any exception thereto taken, by said former counsel.

It is a well settled rule that when a defendant fails to object at the trial to questions asked by the court of witnesses, he is not entitled to make an assignment of error for the first time on appeal. (*People* v. *Savage,* 66 Cal.App.2d 237 [152 P.2d 240]: *People* v. *Boggs,* 12 Cal.2d 27 [82 P.2d 368].) Nevertheless, we have examined the entire record with great care and are unable to say that the judge who tried the case transgressed the proper limits of judicial discretion in essaying to elicit from the witnesses all of the truth as to matters testified to by them in response to the questioning by counsel. Our attention has not been called to any question asked by the trial judge which was properly subject to any objection other than that it was being asked by

the court instead of by counsel, and this being so, it is difficult to understand how the interrogation by the court could have constituted prejudicial error.

The following language from *People* v. *Golsh*, 63 Cal. App. 609 [219 P. 456], at page 614, is apropos:

"The duty of a trial judge, particularly in criminal cases, is more than that of an umpire; and though his power to examine the witnesses should be exercised with discretion and in such a way as not to prejudice the rights of the prosecution or the accused, still he is not compelled to sit quietly by and see one wrongfully acquitted or unjustly punished when a few questions asked from the bench might elicit the truth. It is his primary duty to see that justice is done both to the accused and to the people. He is, moreover, in a better position than the reviewing court to know when the circumstances warrant or require the interrogation of witnesses from the bench. As was said by the Georgia court of appeals in *Hart* v. *State*, 14 Ga.App. 364 [80 S.E. 909] : 'While great caution should be used in its exercise, the trial judge has the right, in his discretion, to question the witnesses during the progress of a trial, in order to elicit the truth, and this discretion will not be controlled except where it appears that the manner in which the judge exercised his right tended unduly to impress the jury with the importance of the testimony elicited, or would be likely to leave the jury to suppose that the judge was of the opinion that one party rather than the other should prevail in the case.' (See, also, *People* v. *Hunt*, 26 Cal.App. 514 [147 P. 476].)'' (See, also, *People* v. *Yuen*, 32 Cal.App.2d 151, 159 [89 P.2d 438].)

Appellant next contends that the trial judge made improper statements and comments which prejudiced appellant and amounted to prejudicial misconduct. However, the record shows that appellant's counsel at the trial did not assign any of said comments as misconduct or ask that the jury be instructed to disregard them, so it is evident that said counsel did not regard them as prejudicial. Furthermore, it is the invariable custom of trial judges to tell the jury in their final instructions that the court has not intended by any statement or expression to indicate any opinion as to the guilt or innocence of the defendant.

The first instance of asserted improper statement by the court referred to by appellant occurred when the district attorney made an offer to introduce the sewing machine for identification. The following appears in the record:

"THE COURT: Well, who is the officer here, if anybody, who found this?

"MR. KISTLER: We will get to that and put it in evidence, but I thought it should be in for identification purposes.

"THE COURT: Well, until you show some evidence of the defendants having it, it is a little bit premature to offer it.

"MR. KISTLER: It was identified by Mr. Doveton as one in his store and not sold of course.

"THE COURT: Well, you have not any witness on the stand yet that found it in that automobile, have you?

"MR. KISTLER: No. sir.

"THE COURT: All right."

■ Appellant argues that the trial court thus made a statement of fact that the alleged stolen sewing machine was found in the automobile, but in view of the fact that it was admitted by everybody that the machine was found in the automobile this contention is utterly without merit.

■ The next comment of the trial court cited by appellant as prejudicial occurred when appellant's counsel was cross-examining a witness. The record shows the following:

"Q. [MR. GALVIN]: Now that is Flores. Now I mean Argandar, the other one.

"A. He stated nothing very directly, nothing more than that he was with——

"Q. That he had been in there?

"MR. KISTLER: Now your Honor, he should let the witness answer the question.

"THE COURT: Go ahead, Chief, you are doing all right.

"MR. GALVIN: Go ahead."

Appellant argues that the court's statement, "Go ahead, Chief, you are doing all right," was putting the court's stamp of approval on the testimony of the witness, but it is to be noted that appellant's counsel followed up the remark of the court with the statement, "Go ahead." While the comment "you are doing all right" might well have been omitted, we are satisfied that no prejudice resulted to appellant.

The next complaint of the appellant relates to the statement made by the trial court in sustaining an objection of defense counsel to questioning by the deputy district attorney of the defendant Argandar as to what he was going to do with the sewing machine after he decided to take it. The statement of the court was as follows:

"THE COURT: The only question is whether or not he did take it, and what he was going to do with it or why he took

it, we are not concerned with. We are only concerned with the one question. Did he take it?

"MR. KISTLER: And did he have the intention of taking it when he went in the store, your Honor.

"THE COURT: Well, that is answered by the fact that he took it. That is for the Jury to decide also."

Appellant argues: "Bearing in mind that this jury was to decide the fact as to whether each of the defendants charged with Burglary entered the Singer Sewing Machine Store with intent to commit theft therein, the Court's observation in open court that that was answered by the fact that he took it was an invasion of the problems of the jury and an expression from the Court to the jury that the fact of intent to steal was evidenced by the mere fact that the defendant Argandar did take the machine. His subsequent words, 'That is for the jury to decide also' could not possibly have cured, or in any way offset, the terrible damage committed to the defendant by the Judge's very improper and illegal remarks." While the portion of the court's remarks, "that is answered by the fact that he took it," taken out of context, may not be a correct statement of law as to the intent with which defendant Argandar (not the appellant) had entered the store, the court immediately followed the statement with the remark, "That is for the jury to decide also," which shows clearly that the trial court intended to and did indicate to the jury that it was for them to decide with what intent defendant Argandar entered the store. And in view of the fact that the jury was fully instructed as to the elements necessary to justify a conviction of the offenses charged, no possible prejudice could have resulted to appellant from the said comment of the court.

Other remarks of the court asserted by appellant to have been prejudically erroneous are set forth by appellant, but they are even less lacking in merit than the ones hereinbefore mentioned, and we shall not unduly prolong this opinion by discussing them.

Appellant next contends that prejudicial error was committed by the court in questioning some of the officers who testified and in permitting certain questions to be answered. However, the record again shows that no objection to any of said questions was made at the trial, and appellant is not entitled to make the point for the first time on appeal. Nevertheless, we are satisfied from an examination of the record that the evidence was admissible.

■ Appellant next contends that the court erred in admitting into evidence a movie camera and some statuette horses which were found in the automobile at the same time the sewing machine was found. The court in admitting the evidence stated that they were received to show what was in the automobile, and there was no error in receiving them for that purpose.

Officer Demes, a detective in the narcotics division of the Fresno County district attorney's office was permitted to testify that he had followed appellant for three months after the date of the alleged crime, and that both appellant and Argandar were unemployed. Appellant urges this as objectionable because irrelevant to the offense for which appellant was tried, and highly prejudicial because it tended to characterize appellant as a character type who *might* commit burglary.

Respondent counters with the assertion that the evidence was properly admissible to refute defendants' contention that they were virtual strangers and that therefore there could be no collusion in the offense charged, because it showed that they were in fact well acquainted, and supported the inference that their acts were in concert.

■ The record shows that no objection was made to this testimony and further that appellant's counsel brought out from the witness on cross-examination additional facts not testified to on direct examination, so even if the evidence were inadmissible, appellant is hardly in a position to raise it for the first time on appeal.

Appellant's final contention is that the following portion of the cross-examination of codefendant Argandar shows prejudicial misconduct on the part of the deputy district attorney:

"MR. KISTLER: As a matter of fact, Louie, this is rather a common procedure of shoplifters, isn't it?

"MR. GALVIN: Now just a moment, if your Houor please, that is certainly incompetent.

"MR. KISTLER: I think I can——

"THE COURT: That is sustained. We are not concerned about anybody's practice. Only this man here. The objection is sustained.

"MR. KISTLER: Have you ever shoplifted anything else in this manner, Louie? A. No."

Appellant argues that this is prejudicial misconduct, because, even though appellant Flores was not on the stand, he was a codefendant, being tried by the same jury, which could not strike from their minds the unfavorable effect that such a line of cross-examination would have on them, thus denying appellant a fair and impartial trial. ▆ In reply, respondent argues, correctly, that since an objection was sustained to the first question of the prosecutor, it is to be assumed that the jury in following their instructions disregarded testimony to which objection was sustained. As to the second question, no objection was raised thereby by defense counsel, and objection may not be made for the first time on appeal. Further, since Argandar had already admitted the theft by means of the procedure known as "shoplifting," the question was proper to ascertain if this was part of the plan of operation.

The record in the instant case points so conclusively to appellant's guilt that, even if appellant were correct in some of his contentions of error, we could not hold, in view of the provisions of section 4½ of article VI of our state Constitution, that the errors complained of have resulted in a miscarriage of justice.

In view of the foregoing the judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.