THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
RAFAEL ROMÁN MARRERO, Defendant and Appellant.

No. CR-67-189.        Decided December 17, 1968.

*Enrique Miranda Merced, E. Armstrong Watlington,* and *Julio Garcia Antique* for appellant. *Rafael A. Rivera Cruz, Solicitor General,* and *Federico Rodríguez Gelpí, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Defendant-appellant, having been tried for the offense of Murder in the First Degree, the jury found him guilty of Murder in the Second Degree. The presiding judge sentenced him to serve from 10 to 15 years in the penitentiary. He also found him guilty of a violation of § 4 of the Weapons Law and sentenced him to serve one year in jail.

According to the evidence in the record, on June 18, 1963, Roberto Tirado Rodríguez and Carlos Candelario Jiménez were in Ward Candelaria Arenas of Toa Baja drinking liquor. After ten o'clock that night a discussion arose between Carlos Candelario Jiménez and the defendant, Rafael Román Marrero. The former made use of a pistol to fire at defendant. He pulled the trigger but the shot did not go off. They separated and defendant went away. Candelario Jiménez remained together with Roberto Tirado Díaz talking and drinking in front of a closed business. After twelve or fifteen minutes, the defendant returned to that place armed with a machete. He went to the highway with Candelario Jiménez and they had a wrangle. The latter made use of the pistol and pulled the trigger twice but it did not go off. The defendant then gave him a blow with the machete on the forehead wounding him and severing some of the fingers. The pistol fell to the ground. Although the only eyewitness does not know whether the defendant continued attacking Candelario Jiménez, the physician who practiced the autopsy says that the corpse of Candelario Jiménez showed multiple incised wounds on the head, a wound from the left molar region to the nape, wounds on the posterior face of the left shoulder, on the posterior face of the left arm, on the left

scapular region, posterior face of the forearm, posterior face of the third, fourth, and fifth fingers of the left hand, posterior face of the right forearm, posterior aspect of the left thigh, and posterior face of the left knee; lesion on the mid-frontal region with fracture of the front nasal bones; wound on the auricular region of the left auricular pavilion which divides the pavilion into two halves; three wounds on the back.

The cause of the death was the external hemorrhage and hemorrhagic shock, the fracture of the skull and the cerebral lacerations having contributed also to the death. The police seized the pistol near Candelario Jiménez' body and it also seized in defendant's residence the machete used by defendant.

On this appeal appellant assigns as errors (1) certain instructions transmitted by the judge to the jury and (2) that the evidence justifies, at most, a conviction for the offense of voluntary manslaughter.

The first instruction challenged by appellant is the one concerning the definition of the offense of murder and of malice aforethought. He alleges that the judge used the Spanish text of the Penal Code in defining the offense of murder as the act of the unlawful killing of a human being, with malice and premeditation instead of using the English text of said Code which defines said offense as the act of the unlawful killing of a human being, with malice aforethought. He alleges that he committed a like error in classifying premeditation as express or implied instead of referring to malice aforethought. His contention is to the effect that such instructions created confusion in the jury.

■ We do not agree. On more than one occasion the judge instructed the jury in the sense that to commit the offense of murder in the second degree malice aforethought suffices and although he defined the meaning of express and implied premeditation, he also explained the meaning of express and implied malice. So that such instructions did

not tend to confuse the jury on what malice aforethought is in penal law. See *People* v. *Méndez*, 74 P.R.R. 853, 860 (1953).

He also contends that the instruction on implied malice is confusing and constitutes a prejudicial error. He cites isolatedly that part of the instructions where the judge said: "Implied malice is that inferred by law from the criminal act consisting in itself and when the death of a person is evident and there is no circumstance in the evidence the purpose of which is to mitigate, excuse, or justify the act executed by the one who caused it, then the existence of implied malice is presumed." The judge added: "Notwithstanding the presumption, the existence of implied malice is a question of fact to be decided exclusively by the jury and if from the evidence presented by the prosecuting attorney or from the entire evidence there arise circumstances of mitigation, excuse or justification, or evidence of lack of criminal intent, the presumption should be disregarded, the jury being entitled in any event to reach its own conclusions on the existence of malice." The judge also transmitted to the jury the following instruction: "Malice may be inferred from the use of a weapon since such use may be accompanied by intent to kill or inflict great bodily injury whose probable consequence is death. Now then, the person accused of firing a weapon or of brandishing a knife, a machete, may be impulsive and impetuous."

We cannot conclude with appellant that these instructions led the jury to believe that the People was not bound to establish malice aforethought. The judge had already charged the jury in the sense that when "the element of deliberation is absent but the other elements of premeditation, specific intent to kill are present, the murder is in the second degree. It could be murder in the second degree even though the specific intent to kill is absent." Another pertinent instruction was the following: "In a prosecution for murder, the People is

not bound to introduce direct and specific evidence of malice and premeditation, it being possible to infer them from the manner a weapon is used."

In the second assignment of error appellant maintains that the following instruction is confusing and misleading:

"In order to reduce the offense of murder to manslaughter on the basis of sudden quarrel or heat of passion, the death must have occurred while the aggressor or offender acted under the direct and immediate influence of such quarrel or heat of passion.

"When the influence of a sudden quarrel or heat of passion has ceased to confuse the mind of the accused and sufficient time has elapsed for the passion to cease so that reason may control defendant's conduct, the offense of murder is not reduced then to manslaughter.

"The real question is whether the cooling period has elapsed and whether reason has returned, has regained control of defendant's conduct. That is not measured by the defendant's standard but by the duration of the cooling period which is the time a reasonable person takes to calm down, to cool off, so that reason may regain control. The true measure is that of . . . not the defendant's but that of an ordinary person, of a reasonable person." (Tr. Ev. 59, 60.)

■ Appellant alleges that the test to determine the "cooling period" should be the period of time needed by the defendant to calm down or cool off, and not that needed by an ordinary and reasonable person in like circumstances.

The instruction, approved by this Court on former occasions as recognized by appellant, is correct. The doctrine on the "cooling period" has been approved in California as well as in the majority of the courts of the United States.

In *People* v. *Golsh*, 219 Pac. 456, the defendant requested the court to transmit this instruction to the jury: "Cooling time, or that space of time which will be deemed sufficient for a man to cool after a conflict, may differ with different persons, according to the constitution of their nature. No uniform rule can be laid down as the length of time when

a man shall have 'cooling time.' It is for the jury, under all the evidence, to decide as to the actual conditions of the mind of the actor."

Said instruction having been rejected the court of appeals upheld the trial court. It was said that that part of the instruction to the effect that the cooling time may differ with different persons according to the constitution of their nature is not a correct statement of the law. The court added:

"In that case [referring to *People* v. *Bush*, 65 Cal. 129] our Supreme Court held that 'cooling time' is the time in which an *ordinary* man, in like circumstances, would have cooled. The rule approved by the majority of our courts is that 'cooling time' is not the time it would take an ideal man or the defendant, but the time it would take the average man or the ordinarily reasonable person, under like circumstances."

This doctrine was ratified in *People* v. *Gingell*, 296 Pac. 70. See also, 1 Warren, Homicide 446, § 91; 1 Wharton, Criminal Law and Procedure, § 286; 40 Am.Jur.2d § 68.

Since the instruction challenged is correct, the second error was not committed.

■ In the third assignment appellant maintains that the trial court erred "in charging the jury that for a person to invoke self-defense, it is necessary that the person requesting the benefit of self-defense, be not to blame for the fight to which he was driven and as a result of which another person died; and that it is necessary that the accused has not had any other means to escape the attack, except killing his adversary."

The instructions indicated are not erroneous. As to defendant's lack of blame in the encounter where another person died, see *People* v. *Hernández Maldonado*, decided June 9, 1964, Advanced Sheet Bar Asso. 1964-112; 1 Warren, Homicide 664 and 670, § 151. In general terms the rule is to the effect that a person cannot avail himself of a situation

created by him and which leads him to kill another person in order to save his life or to avoid great bodily injury.

It is also a rule of self-defense that the slayer should have used all the means available to him, consistent with his safety, in order to avoid injuries or to have to kill another person in self-defense. 1 Wharton, Criminal Law and Procedure, § 228; 25 Cal.Jur.2d § 282. The court did not err in charging the jury in that sense.

■ It was inappropriate, contrary to appellant's contention in the fourth error, to instruct the jury on dueling.

In dueling sudden heat and passion do not intervene, but it is something deliberately planned and generally under rules of considerable formality. 2 Wharton, Criminal Law and Procedure, § 848; 25 Am.Jur.2d § 1. Also, there was no basis in the evidence to transmit such instruction. *People v. Martínez Díaz*, 90 P.R.R. 456 (1964); *People v. Túa*, 84 P.R.R. 37 (1961).

■ Finally we cannot agree with appellant that the offense committed is voluntary manslaughter.

The evidence, as we have recited it, was sufficient for the jury to infer, as it did, that appellant killed Candelario Jiménez with malice aforethought. The verdict returned by the jury, is not, therefore, erroneous nor contrary to the evidence or to law.

The judgments appealed from should be affirmed.