STATE, Respondent, *v.* GONDEIRO, Appellant.

(No. 6,280.)

(Submitted June 1, 1928. Decided June 16, 1928.)

[268 Pac. 507.]

*Criminal Law—Reckless Driving of Automobile—Manslaughter—Information — Sufficiency — Evidence — Intoxication — Bills of Particulars—Discretion.*

Manslaughter—Automobiles—Death Caused by Reckless Driving—Evidence of Surgeon as to Utterances of Defendant on Recovery from Effects of Anesthetic Applied for Purpose of Operation—Admissibility.

1. In a prosecution for manslaughter against the driver of an automobile for the death of a young girl caused by his reckless driving while riding with him as his guest, testimony of a surgeon who, after applying an anesthetic, had treated him for a serious scalp wound received in the accident, that defendant after the operation had said that he would never again take moonshine whisky, *held* properly admitted as against the objection that, when the statement was made, defendant had not recovered from the effects of the anesthetic.

Same—Evidence—Improper Question—Harmless Error.

2. Overruling objection to the improper question asked a witness for defendant on cross-examination whether the parents of the girl with the negligent killing of whom while riding with defendant in his automobile he was charged had been consulted as to taking the ride, *held* nonprejudicial where the answer of the witness was that he did not know.

Same—Evidence Relating to Finding of Empty Whisky Bottle Near Wrecked Automobile Held Properly Admitted.

3. Testimony that a bottle which had contained moonshine whisky had been found underneath the wrecked car of defendant charged with the death of a girl guest due to his reckless driving was relevant and properly admitted.

Same — Reckless Driving of Automobile — Manslaughter — Information—Sufficiency.

4. *Held*, that an information charging that defendant "did wilfully, unlawfully, knowingly and feloniously kill one B., a human being, contrary to the form," etc., was sufficient to charge manslaughter, as against the objection that it was fatally defective in not alleging that the crime had been either voluntarily or involuntarily committed.

Same — Bill of Particulars in Criminal Case — Granting or Refusal Rests in Discretion of Trial Court.

5. In the absence of a statute on the subject, the granting or refusal to grant a bill of particulars in a criminal case rests in

---

4. Indictment or information for homicide, see note in 13 Am. St. Rep. 379. See, also, 13 Cal. Jur. 660, 661.

5. Bill of particulars in criminal action, see note in Ann. Cas. 1913A, 1207. See, also, 8 Cal. Jur. 195; 14 R. C. L. 190.

[82 Mont. 530.]

the sound discretion of the trial court, the practice of granting a bill, however, being commendable where it is apparent that by reason of the general character of the charge the defendant may have difficulty in preparing his defense.

Same — Instruction Withdrawing Question of Intoxication of Defendant Held Properly Refused.

6. Refusal of an instruction that there was no competent evidence in a prosecution for manslaughter based on defendant's reckless driving of his automobile, proving or tending to prove that he was intoxicated at the time and that therefore the question of intoxication was withdrawn from the jury's consideration, *held* proper.

---

[1]   Motor Vehicles, 42 C. J., p. 1361, n. 30.
[2]   Criminal Law, 17 C. J., p. 312, n. 44.
[3]   Motor Vehicles, 42 C. J., p. 1362, n. 53.
[4]   Homicide, 29 C. J., p. 117, n. 63, p. 1083, n. 39. Indictments and Informations, 31 C. J., p. 858, n. 93. Motor Vehicles, 42 C. J., p. 1359, n. 92. Statutes, 36 Cyc., p. 1154, n. 81.
[5]   Indictments and Informations, 31 C. J., p. 751, n. 68, p. 752, n. 71.
[6]   Criminal Law, 16 C. J., p. 940, n. 46.

*Appeal from District Court, Cascade County; W. H. Meigs, Judge.*

STEPHEN GONDEIRO was convicted of manslaughter and appeals from the judgment and an order refusing him a new trial. Judgment and order affirmed.

*Mr. W. F. O'Leary* and *Mr. Warren Toole,* for Appellant, submitted a brief; *Mr. O'Leary* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for the State, submitted a brief; *Mr. Angstman* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Upon an information charging him with the crime of manslaughter Steve Gondeiro was found guilty by the jury. The court entered judgment on the verdict, from which, and from an order denying him a new trial, he has appealed.

On the evening of August 14, 1927, a party of young people left Belt for Great Falls, twenty-two miles distant,

in a Reo automobile. The defendant was driving and Mike
Cinker was on the front seat with him. On the back seat were
Mike Gondeiro and John Moniger, both under the influence
of liquor, Anna Sauls and Mary Bykari. Anna was invited
to ride by Moniger and she persuaded Mary Bykari to ac-
company the party. The girls were simply going for a ride.
There was a bottle of moonshine whisky in the car.

The jury was warranted in believing that the car was
driven at a high rate of speed immediately prior to and at the
time of the accident. The defendant admitted that the car
at times was going forty-five miles an hour, though he said at
the time of the accident it was not exceeding thirty. Mr.
Dodson, a witness for the state, testified that just before the
wreck a car traveling toward Great Falls was going with
such speed that it drew his attention by its noise and roar
which continued until a crash was heard. He judged the car
was going sixty miles an hour. The crash was caused by the
collision of defendant's car with a car driven by Ernest
Bowen, who was going toward Belt. The accident occurred
about a mile east of Great Falls. Bowen testified he was on
the south, the right-hand side of the road, going east. At that
point the road is twenty-seven feet wide "from shoulder to
shoulder" according to the measurements of Mr. Lockhart,
the county surveyor. The Reo car, said Bowen, "drove over
on my side of the road and struck me." "The other car was com-
ing awful fast." When Bowen first saw the other car it was on
the north side of the road and Bowen was on the south side.
Bowen was driving at the rate of twenty-five miles an hour.
As the Reo car travelled two hundred feet it swerved over in
Bowen's direction; he tried to avoid it and pulled even fur-
ther to the right. If he had not done so the Reo car would
have hit him head-on. This testimony was corroborated by
Miss Jeanette Jennings who was riding with Bowen. After
striking the Bowen car the Reo left the road on the south side,
turning over. The Bowen car was damaged considerably;
the drive-shaft and housing were bent, the bumpers were

driven against the gas tank and spokes were broken in a wheel from which the hub cap was gone.

Bowen went immediately to the overturned car. It was a wreck and in flames. Mary Bykari was dead. Anna Sauls was unconscious and Bowen pulled her away from the wreck. The others were lying about unconscious except the Cinker boy, who was "running around."

Dr. McBurney, the coroner, who arrived at the scene shortly after the accident, found Bowen's car in a diagonal position on the right side of the road. The rear wheels were locked and the car could not be moved. The Reo, or Gondeiro car, was about 125 feet distant from the Bowen car and on the south side of the road. It was 26.5 feet south from the south shoulder of the road according to the measurment of the county surveyor. Under, or nearly under, the car was a bottle which had contained moonshine whisky. Occupants of the car testified that the defendant did not drink from the bottle during the ride but Mike Gondeiro and Moniger did. But witnesses testified to having smelled liquor on the breath of the defendant at the scene of the accident and later.

The defendant's scalp was almost completely torn from his [1] head. At the hospital to which he was taken, and after a surgeon had replaced and sewed the scalp upon the head, the defendant said to Dr. Keenan, a surgeon who was attending Moniger, "If I ever get out of this I will not take any more of that poison." The doctor inquired, "What poison?" and the defendant replied "Moonshine."

Defendant's counsel argue that this testimony was not credible because it was shown that the defendant when he is said to have made the remarks just quoted had not recovered from the anesthesia in which he was placed for the operation. When he carried on the conversation he was sick from the anesthetic, vomiting frequently. But Dr. Keenan was of the opinion that the defendant was conscious and knew what he was saying. The weight of the testimony was for the jury.

A more detailed narration of the testimony is unnecessary. Suffice it to say that the jury was fully justified in believing beyond a reasonable doubt that the death of Mary Bykari was caused by the collision which was the direct result of defendant's driving his car at an unreasonable rate of speed and in a manner which unduly and unreasonably endangered the lives of others upon the highway. On his part the defendant attempted to maintain that he was blinded by the lights of the Bowen car, and in this his witnesses sought to corroborate him. The jury did not believe his explanation.

1. We have examined the specifications of error respecting [2] the rulings of the court upon the admission or rejection of evidence but do not find error prejudicial to the defendant in any of them. For instance, defendant urges error because the county attorney was permitted to ask Mike Gondeiro on cross-examination, "And did they consult their parents about taking these fifteen year old girls out?" The answer was, "I don't know whether they did or not." Anna Sauls was past sixteen years old at the time, as she had testified. John Bykari, father of Mary, had said Mary was eighteen years old. The question was improper but we fail to see how it could have a prejudicial effect upon a sensible jury.

Criticism is directed to the ruling of the court permitting the witness Dodson to give his opinion as to the speed of defendant's car immediately prior to the crash, but we think the witness was qualified to express the opinion he did.

It is urged strenuously that the court erred in admitting [3] testimony respecting the bottle found in proximity to the car. We are wholly unable to agree with this argument. Clearly the testimony was relevant.

2. The important questions in the case relate to the suffi- [4] ciency of the information and the right of the defendant to a bill of particulars. The first of these questions is of first impression in this state and requires careful consideration. Accidents upon the public highways, through the instrumentality of motor cars, frequently causing death, are so

prevalent, resulting in prosecutions for unlawful killing, that it becomes necessary to define the rule of pleading which should govern in such cases.

The information charged that defendant "on or about the 14th day of August, A. D. 1927, at the county of Cascade, in the State of Montana, and before the filing of this information did commit the crime of manslaughter, in this: That the said defendant did wilfully, unlawfully and knowingly and feloniously kill one Mary Bykari, a human being, contrary to the form," etc.

As every student of the law knows, one accused of crime was greatly restricted in his defense by the early laws of England. Because of this, solicitude for the accused brought into existence the common-law system of criminal pleading under which it was deemed necessary to state the offense charged with the greatest particularity. This was done sometimes to the point of absurdity. The reason given for the requirement was that the defendant might be fully informed as to the case against him, to enable him to prepare for his defense. Availing himself of the technicalities provided by law the criminal altogether too frequently went unwhipped of justice. He took advantage of the rules provided for his protection and made the administration of the law little better than a public scandal. For centuries the system "aided criminals in escaping the penalty of crime, to the great reproach of the law, without affording any assistance to the administration of justice." (*People* v. *Cronin,* 34 Cal. 191.) Illustrating this, the supreme court of California, in *People* v. *King,* 27 Cal. 507, 87 Am. Dec. 95, said: "Under the pretense of informing the defendant of the nature of the charge against which he was called upon to defend, it was necessary, at the ancient common law, to describe the means by which the homicide was committed, and the nature and extent of the wound and its precise locality; from which it necessarily followed that a trifling variance between the proof and the allegation fre-

quently defeated a conviction, no matter how manifest the guilt of the defendant."

To obviate this condition the English Parliament over seventy-five years ago passed an "Act for further improving the Administration of Criminal Justice." Section IV thereof provided that in any indictment for murder or manslaughter "it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, wilfully, and of his malice aforethought kill and murder the deceased, and it shall be sufficient in every indictment for manslaughter to charge that the defendant did feloniously kill and slay the deceased." (14 & 15 Vict., Chap. 100.) A similar statute has been enacted in several of the United States. Over sixty years ago the supreme court of California, in *People* v. *King*, supra, said: "A disposition to relax much of this ancient strictness in criminal proceedings has manifested itself in modern practice, and in harmony therewith the legislature of this state has substituted, in the place of the old, a new system of practice and pleading, which retains all the elements of the former so far as they are made necessary by a due regard for the substantial rights of a defendant, but discards all such elements as serve no good purpose, and only tend to embarrass and defeat the administration of justice. That system provides a few plain and simple rules by which to determine the sufficiency of pleadings, and declares that such rules shall be the test. (Sec. 235.)" Section 235, cited in the opinion, was re-enacted as section 948 of the Penal Code of California. We borrowed it from California and it appears in our 1921 Revised Codes as section 11841.

In the later case of *People* v. *Cronin*, supra, the court, following the doctrine of the *King Case*, said that under the statutes of California the particular circumstances need not be stated unless they are necessary to constitute a complete of-

fense. Murder is the unlawful killing of a human being, with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned. "Killing a human being unlawfully, with malice aforethought, is the offense, and must be stated. How and by what means it was done are the particular circumstances, and need not be stated, for no particular mode or means are necessary to constitute the offense. That the statute dispenses with a statement of the mode and means by which death was occasioned, in view of these provisions, would seem to be too clear for controversy." The court held further, in effect, that by adopting the Criminal Code the California legislature intended to adopt the principle of the English statute quoted above. In answer to an argument of counsel that the doctrine of the *King Case* was novel and dangerous to human life and liberty, the court said: "But it is neither novel nor dangerous. A reform made necessary in the judgment of the legislators and judges of England, after centuries of experience, need not inspire counsel with apprehensions of danger to life and liberty, nor need they be startled by the novelty of a doctrine which was announced more than seventeen years ago by one of the most eminent of American jurists, not under the influence of popular excitement, as suggested by counsel, but, as we believe, under the guidance of that nice discrimination for which he was remarkable and by the aid of which he rarely failed, if ever, to distinguish between chaff and wheat—sophistry and logic. (*Webster's Case,* 5 Cush. 295, 52 Am. Dec. 711.)"

The experience of more than three score years in California has affirmed the wisdom of Mr. Justice Sanderson's words: the *Cronin Case* has many times received the affirmance of the supreme court of that state.

Upon the principle often announced by this court we assume that in adopting statutes from another state our legislature intended that the construction given the statutes by the higher courts of that state should be the rule for the

guidance of the courts of this state. (*Deer Lodge County* v. *United States Fidelity & Guaranty Co.*, 42 Mont. 315, Ann. Cas. 1912A, 1010, 112 Pac. 1060; *State* v. *State Board of Examiners*, 59 Mont. 557, 197 Pac. 988.)

Moreover, this court, in *State* v. *McGowan*, 36 Mont. 422, 93 Pac. 552, and in *State* v. *Hayes*, 38 Mont. 219, 99 Pac. 434, held directly that it is not necessary in an information for murder to set forth the facts showing how and by what means the actual killing was accomplished. The holding of those cases was reaffirmed in *State* v. *Nielson*, 38 Mont. 451, 100 Pac. 229, *State* v. *Bolton*, 65 Mont. 74, 212 Pac. 504, and *State* v. *Won*, 76 Mont. 509, 248 Pac. 201.

An information for murder necessarily includes manslaughter. (*State* v. *Nielson*, supra; *State* v. *Crean*, 43 Mont. 47, Ann. Cas. 1912C, 424, 114 Pac. 603; *People* v. *Muhlner*, 115 Cal. 303, 47 Pac. 128.) If an information sufficiently informs the accused of the cause and nature of the accusation against him for murder, it must follow that it sufficiently informs him of the cause and nature of any offense included within that of murder, for the greater contains the less. (*State* v. *Averill*, 85 Vt. 115, Ann. Cas. 1914B, 1005, 81 Atl. 461.) According to the great weight of authority a person informed against for murder may be convicted of involuntary manslaughter. (See note to *State* v. *Averill*, supra, citing many cases.) This is recognized, impliedly at least, in *State* v. *Kuum*, 55 Mont. 436, 178 Pac. 288.

Section 10959, Revised Codes 1921, reads as follows: "Manslaughter is the unlawful killing of a human being, without malice. It is of two kinds: 1. Voluntary, upon a sudden quarrel or heat of passion. 2. Involuntary, in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection."

We borrowed this section from California in 1895. Before that the law governing manslaughter in this state was materially different from the present law.

In *People* v. *Pearne*, 118 Cal. 154, 50 Pac. 376, the indictment charged that the defendant "did deliberately, wilfully and unlawfully kill one Ellen Dojan." The evidence indicated that the killing was not done deliberately and wilfully, but accidentally and unintentionally, and the jury found the defendant guilty of involuntary manslaughter. Upon appeal it was argued that the indictment charged the crime of voluntary manslaughter and that under it a verdict of involuntary manslaughter constituted a fatal variance. The court overruled the contention saying that if the indictment had charged simply an unlawful killing without malice it would have charged the crime of manslaughter of both kinds, voluntary and involuntary.

In *People* v. *Hunt*, 26 Cal. App. 514, 147 Pac. 476, wherein the defendant was convicted of manslaughter, his counsel made the same contention which is made here, asserting that under the information in that case the defendant was not enabled to know whether he was being prosecuted for voluntary or involuntary manslaughter; and if for the latter, whether he was charged with manslaughter in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner, or in the commission of a lawful act without due caution or circumspection. The conviction was sustained upon the authority of *People* v. *Pearne,* supra. To the same effect is *People* v. *Sidwell,* 29 Cal. App. 12, 154 Pac. 290.

An instructive case upon the very matter in hand is *People* v. *Bones,* 35 Cal. App. 429, 170 Pac. 166, in which it was charged that the defendant upon a certain date, "at and in the county of Sonoma, state of California, did wilfully, unlawfully and feloniously kill and murder one Miles Gaffney, a human being," etc. The defendant argued that the information failed to charge the crime of manslaughter because it did not directly allege that the killing was done without malice, and further that it was insufficient because it did not state

whether the crime was voluntary or involuntary manslaughter, and it was insisted that the defendant was entitled to be informed by the accusatory pleading of the precise crime for which he was to be tried, which the information did not do. After quoting the statute defining the crime of manslaughter the court said that the information charged the crime of manslaughter substantially in the language of the statute and sufficiently apprised the defendant ''of the particular offense to which he was required to plead and interpose any defense which might be available to him.'' The court did not agree to the proposition that it was necessary to show by proper averment in the information of which one of the two kinds of manslaughter it was intended to accuse the defendant. ''While there exists a distinction between the two kinds of manslaughter, resulting, however, only from the difference in the circumstances under which the act of killing is committed, still no difficulty can be encountered by one accused by an information charging manslaughter generally, or without reference to the particular kind which the evidence may show it to be, to make as complete and perfect a defense against either kind of manslaughter as he might if one of the two kinds were specifically charged. A person so charged can certainly be placed at no greater disadvantage or inconvenience in making his defense than may a person charged with the crime of murder by an information which does not specify, as the law does not require to be specified, the degree of that crime of which it is sought to charge and convict him.''

Time and experience have demonstrated the wisdom of this court in approving the information in the *Hayes Case,* supra. The simplified pleading there approved has improved the administration of the law in murder cases in this state without depriving any defendant of his substantial rights. If the rule laid down in the *Hayes Case* is to be approved we see no reason why that adopted by the California courts in manslaughter cases should not also be approved, and we do so

[82 Mont. 530.]

without hesitation, and hold the information in this case sufficient.

3. Except as provided by statute, a defendant is not en-
[5] titled to a bill of particulars as a matter of right. The granting or refusal of it rests in the sound discretion of the trial court. Such is the rule in Colorado, Florida, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, New York, North Carolina, Pennsylvania, Vermont and Washington. (See note to *State* v. *Lewis,* 26 Ann. Cas. 1208.) It seems to be the rule in California. (*People* v. *Superior Court,* 53 Cal. App. 185, 199 Pac. 840.) "The matter rests within the sound judicial discretion of the court, depending entirely upon the nature and circumstances of each particular case as they appear to the court before whom the appeal is had, and the refusal of the trial judge to grant said motion will not be disturbed or reversed by an appellate court, unless there was an abuse of such discretion." (*Mathis* v. *State,* 45 Fla. 46, 34 South. 287.)

In view of our statutes which do not require the furnishing of a bill of particulars we think the rule above announced is the one which must be adopted in this state. That a bill of particulars is permissible in a proper case is recognized in *State* v. *Sedlacek,* 74 Mont. 201, 239 Pac. 1002. When it is apparent to the court that the defendant by reason of the general character of the charge may have difficulty in preparing his defense we think the trial judge should incline toward granting a motion for a bill of particulars; we commend the practice. While it is true that the prosecutor will be restricted in his proof by the statement furnished, it must be borne in mind that he is presumed to have acquainted himself with the facts before filing the information, and no good reason appears why he should not apprise the defendant of the precise act which he intends to prove. While the district court might with propriety have granted the motion in this case, we are unable to see that it abused its discretion in refusing it. It does not appear that the defendant was unable

amply to prepare his defense; on the contrary his able and experienced counsel seem to have anticipated the evidence offered by the state, and to have been prepared to meet it.

4. The defendant complains of certain instructions given, and of the court's refusal to give instructions offered by him. The subject has given us concern and we have discussed the assignments of error with respect thereto thoroughly about the council table.

Among other instructions the defendant requested the court [6] to tell the jury "that there is no competent evidence in this case proving, or tending to prove, that the defendant was intoxicated at the time of the collision and therefore that question is withdrawn from your consideration." The court properly refused the instruction. It also refused two others touching the question of intoxication and did not give any specific instruction on that phase of the case. Viewing the whole case and the instructions given, it is clear to us that had the court given either of the two instructions requested, the defendant would not have been any better off; indeed, we think, the charge was quite as favorable to him as if either instruction had been given.

We are also of the opinion that the question of negligence was covered sufficiently.

Our conclusion upon the whole subject is that the instructions given covered the case adequately and were as favorable to the defendant as he reasonably could ask. When a case is covered adequately additional instructions often tend to confuse rather than to enlighten a jury.

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.