THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CARMELO PAGÁN, Defendant and Appellant.

No. 5817. Argued November 26, 1935.—Decided January 23, 1936. Rehearing denied March 27, 1936.

*M. Acosta Velarde* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the court.

Carmelo Pagán was charged with a violation of section 328 of the Penal Code. According to the information filed by the District Attorney of Ponce the said defendant, "on or about a day of the month of July, 1933, and in the municipality of Santa Isabel, which forms a part of the judicial district of Ponce, P. R., wilfully and unlawfully and while driving in his capacity as engineer a railway engine, acted so carelessly, negligently, and with such lack of circumspection that the said engine collided with an oxcart, with the result that grave injuries were inflicted on Crescencio Ramos, a human being, who died in consequence thereof almost immediately after the accident."

The defendant filed a motion requesting detailed specification as to what constituted the negligence of the defendant, a description of the place where the accident occurred, and further clarification of other facts relating to the occurrence. The district court granted the said motion as to the first two specifications, whereupon the district attorney produced a bill of particulars in conformity with the order made. The defendant demurred to the information on two grounds, namely, (1) lack of facts sufficient to constitute a public of-

fense and (2) want of jurisdiction, both of which were overruled by the district court. After a trial before a jury, the defendant was convicted and sentenced to six months in jail.

It is contended, in the first place, that the lower court erred in overruling the grounds of demurrer interposed to the information. The first question discussed in the brief of the appellant relates to the ground of insufficiency. According to the defendant, the information failed to specify or mention the place of the accident, or to allege any fact giving rise to any legal duty on the part of the engineer to observe any care or diligence in regard to the deceased, Crescencio Ramos. It is stated in the information that the accident occurred within the municipality of Santa Isabel. The defendant moved for a bill of particulars describing the place of the accident. The district attorney, pursuant to the order of the court and complying with the request of the defendant, stated in his bill of particulars that the accident occurred at a crossing of the railroad and a private road, known as "Río Jueyes," in the ward of "Jauca Segunda", municipal district of Santa Isabel, which road is used by all the workers at the "Río Jueyes" cane plantation (*colonia de cañas*) as a trafficway in connection with the various agricultural activities carried on there.

In *State* v. *Grossman et al.*, 112 Atl. 892, a case decided by the Court of Appeals of New Jersey, it was alleged in the indictment that the defendant was keeping a disorderly house in the city and county in which the offense was committed. It was held that if the defendant wanted a more specific description of the place where the offense was committed he could, in order to attain his purpose, demand a bill of particulars. In the instant case the defendant demanded the specifications which he thought proper and his demand was complied with. The defendant has been fully informed, and he can not plead ignorance of the facts set forth in the bill of particulars.

■■ According to the defendant, it should have been specifically stated in what consisted the alleged negligence,

carelessness, or lack of circumspection attributed to the defendant. It is further urged that, as a general rule, the information is sufficient if it follows the wording of the statute, but that in the present case the use of such language is not sufficient. It is contended that in an information against a chauffeur it is sufficient to allege that due to the gross negligence or carelessness of such chauffeur a collision occurred, because automobiles travel over the public highways and the mere fact of so traveling establishes an obligation or duty owing from the driver to the pedestrian, which is not the case where a locomotive is operated on land belonging to the railroad company. In the instant case, according to the defendant, it was necessary to allege the existence of a public crossing or the concurrence of facts upon which arises the obligation or duty owing from the engineer to the person injured. This question was settled by us in the case of *People v. Rodríguez*, 47 P.R.R. 565, where we cited authorities holding that where a defendant is informed of the nature of the offense he is called upon to answer, it is unnecessary to set out in detail in what the negligence charged against him consisted. In *State v. Watson*, 216 Mo. 420, 432, 433, cited by us with approval in the above case, the following was said:

"It was not, in our judgment, essential that the information should undertake to set out in detail in what such carelessness, recklessness and culpable negligence consisted, but the charge that he operated and propelled this automobile along a public street carelessly, recklessly and with culpable negligence was in effect notifying the defendant that he was not using, operating or propelling his automobile in accordance with the law or the ordinances of the city regulating the use and operation of such machines.

"Manifestly the defendant knew that he would have to meet the charge of carelessness, recklessness and culpable negligence in the operation of his automobile, and in meeting such charge doubtless his only defense would be that he operated and propelled such automobile in accordance with the laws and ordinances of the city, duly passed, regulating the running of such vehicles. The defendant could not have been misled by this charge. He could not have been

taken by surprise. Under the allegations in this information he must have known that the State would undertake to develop every fact which tended to establish any sort of negligence, carelessness or recklessness in the operation of that machine.''

The information charges that the engineer was driving the engine with such negligence, carelessness, and lack of circumspection that the said engine collided with an oxcart, with the result that Crescencio Ramos, a human being, was gravely injured and died almost immediately in consequence of the injuries received. The information practically uses the language of the statute. It is true that it is not alleged therein that the engineer suffered or caused the engine to collide with the oxcart, but the equivalent language is used showing clearly that the negligence, carelessness, and lack of circumspection in operating the engine produced the collision which occasioned the accident. Furthermore, in the bill of particulars, produced on motion of the defendant, it is stated that the negligence, carelessness, and lack of circumspection on the part of the defendant consisted in driving the locomotive at great speed and in failing to reduce such speed on approaching the place of the accident, and in not sounding the whistle nor the bell before reaching the said place, blowing the whistle almost at the moment the engine collided with the oxcart driven by Crescencio Ramos.

The defendant analyzes the information together with the bill of particulars, and reaches the conclusion that the former does not state facts sufficient to charge the defendant with a public offense. He alleges that there is no criminal statute in Puerto Rico regulating the speed of trains; that the only law regulating such speed is Act No. 70, passed by the Legislature of Puerto Rico in 1917 (Session Laws, II, p. 448), and that subdivision (q) of section 3 of that act refers to railroad companies, upon which it imposes the duty of reducing the speed of their trains only at street crossings.

In *People* v. *Rodríguez, supra,* we cited with approval the case of *Missouri, K. & T. Ry. Co. of Texas* v. *Luten,* 203

S. W. 909, 914, decided by the Court of Civil Appeals of Texas, in which it is said that although the place of the accident is in the country, and there is no statute regulating the speed of trains, yet negligence may be evidenced by the speed at which the train is being propelled, when considered in connection with the place of the accident and the circumstances surrounding it.

The speed of a train in approaching a place used as a trafficway without giving proper signals may constitute negligence. 52 C. J., par. 1827, p. 244; *Central of Georgia R. Co.* v. *Pope,* 127 So. 835. It all depends upon the rate of speed, the absence of warning, the location of the crossing, and other circumstances which it is incumbent on the jury to consider in order to reach their conclusions.

In the case at bar both the element of speed and the absence of warning have been alleged in the bill of particulars, where it is stated that the engine was being propelled at great speed; that the defendant did not sound the whistle nor the bell before reaching the place of the accident, and that the whistle was blown almost at the moment that the engine collided with the oxcart driven by Crescencio Ramos. The defendant has been fully informed. The evidence for the prosecution tended to prove the above allegations and that for the defense to disprove them. The issue was openly joined and the jury rendered their verdict after weighing the evidence. We are of opinion that the information which served as a basis for the evidence introduced is sufficient to sustain the charge brought, and that the error assigned by the defendant in this respect is without merit.

█ It is urged that the District Court of Ponce was without jurisdiction to try this case because the information was filed by the District Attorney of Ponce relying on the testimony of witnesses examined under oath by the District Attorney of Guayama. It is argued that the law requires that witnesses be examined by the prosecuting attorney who files the

information or by a committing magistrate, in accordance with section 3 of the Code of Criminal Procedure which in its pertinent part reads as. follows:

"Every offense of which the district court has original jurisdiction must be prosecuted by information filed by the prosecuting attorney, in open court, verified by his affidavit, which shall be sufficient if it states that the information is based upon the testimony of witnesses, sworn before him or upon the testimony of witnesses taken before an examining magistrate, and that he solemnly believes that there is just cause for filing the information. . . . "

In July 1933, when the facts alleged in the information occurred, Act No. 51 of our Legislature, approved in May 1933, to become effective ninety days after its approval, had not as yet gone into effect. By that act the Santa Isabel District was segregated from the judicial district of Guayama and annexed to that of Ponce. Originally the District Court of Guayama had jurisdiction of the case. The prosecuting attorney for that district made the proper inquiry in order to determine whether or not there was ground for prosecuting the defendant. On November 16, 1933, after the Municipality of Santa Isabel had been annexed to the judicial district of Ponce, the prosecuting attorney for the latter district filed an information on the testimony of witnesses who had been examined under oath by the District Attorney of Guayama, solemnly believing that there was just cause for filing it in court. The prosecuting attorney, in accordance with the law, inquires into the facts and, if there is probable cause to prosecute, files an information, practically assuming the functions of a committing magistrate. When the grand jury is not called upon to act, as in the present case, the prosecuting attorney not only makes the inquiry as would a committing magistrate but also files the information in the proper court, supporting it with affidavits. The circumstance that the District Attorney of Guayama should have conducted the preliminary inquiry while he was empowered to do so, and that it was the District Attorney of Ponce who has filed the infor-

mation, can not have the effect claimed by the defendant. In our view, the information was properly filed and the court acquired jurisdiction to try the case. The error assigned must be dismissed.

The second and third assignments relate to the evidence. It is urged that the latter is not sufficient to establish the guilt of the accused. The defense maintains that under the bill of particulars the prosecution was limited to the proof that the defendant was guilty of criminal negligence because on approaching the crossing formed by a private road and a railroad, the engine was going at great speed and he failed to reduce the same when nearing the place of the occurrence, and because he did not sound the whistle nor the bell before reaching the said place, blowing the whistle almost at the moment that the collision, which caused the death of Crescencio Ramos, occurred.

The accident occurred at a place where the railroad track crosses a private road in the municipal district of Santa Isabel. This road is used by all the workmen from the "Río Jueyes" cane plantation (*colonia*) as a trafficway in connection with the various agricultural activities carried on there. The collision took place at the moment that Crescencio Ramos was driving a cart drawn by two yoke of oxen and was passing over the grade crossing while sitting on the pole of the cart. Carlos Pérez Velázquez was standing in the rear of the cart. At the moment that the forward oxen were crossing the track the engine approached, blew its whistle, and immediately collided, dragging Crescencio Ramos for a distance of about 200 meters, according to the evidence for the prosecution. The defendant admitted that the engine stopped at a distance of about 60 meters. Carlos Pérez had an opportunity, when seeing the engine approach, to jump out of the cart and come out unhurt from the accident. Crescencio Ramos died in consequence thereof.

The eye-witnesses, Carlos Pérez Velázquez, Rafael Santiago, Carmelo Martínez, Pedro García, and Pedro Martínez testified that they did not hear any other steam whistle than that which was blown immediately before or almost simultaneously with the collision. The train did not blow its whistle before entering the grade crossing, blowing such whistle only when it was already upon the oxcart. This is the evidence introduced by the prosecution. A witness testified that the train was "running wild" (*esmandao*), going at a tremendous speed, when the accident occurred. All the evidence introduced by the government tends to show that the engine was going quite fast.

The jury returned a verdict of guilty. They, therefore, did not believe the testimony of the witnesses for the defense. They exercised their functions as judges of the facts, weighing the evidence introduced, and there is no reason why this court should alter, modify, or annul the verdict rendered.

The conductor and the defendant testified that the train blew its whistle at the accustomed place. Ramón Gelabert, an engineer of the railroad company and a witness for the defendant, stated that there is a signal calling for a whistle or blast in the neighborhood of the grade crossing at a distance of about 119 meters from the center of said grade crossing. There is also at that place a sign with the legend: "Stop, Look, and Listen." All these circumstances show that the railroad company and the defendant himself knew that that was a place of traffic which was somewhat frequently used.

In *Ferrer & Son* v. *American R. R. Co.*, 39 P.R.R. 36, 39, this court said:

"The principal distinction between this case and that of *Marrero* v. *Am. R. R. Co.*, *supra*, is that in the latter the company had recognized the public or quasi-public character of the crossing by putting up signs, 'Stop, Look and Listen,' thereby showing that it knew that the public generally passed. Nevertheless, we are not prepared to say that no duty arose in the defendant whatsoever, and, given all the conditions and the opinion of the court below, we shall as-

sume, if not decide, that the road had taken on such a character that the defendant owed some duty to the persons traveling over it.''

We can say that we have examined all the evidence introduced and we are inclined to believe that the jury was correct in weighing the same. The defendant maintains that in accordance with the adjudicated cases, the engineer of a train is not required to blow the whistle in approaching a private crossing. This rule is not absolute. The special circumstances of each case must always be considered. The adjudicated cases themselves recognize some exceptions. The crossing where the accident occurred was often used by the laborers of the ''Río Jueyes'' cane plantation (*colonia*) and the public had access to the said crossing. Moreover, in Puerto Rico there is Act No. 70 of 1917 (II), *supra,* subsection 3 (*q*), of which reads as follows:

''If a railroad company, . . . to provide its locomotives with bells and whistles which shall be used upon approaching curves, tunnels, and road or street crossings and whenever necessary as a warning of the approach of such locomotives and trains which shall reduce their speed to a minimum on street crossings, and shall use, after sunset, such lights as may be necessary and the commission may determine.''

This act, according to the defendant, refers only to public road or street crossings. Assuming, without admitting, that the act is susceptible of this construction, the attendant circumstances of this case, in accordance with the authorities, support the verdict of the jury. The evidence shows that the company as well as the defendant knew that the place where the accident occurred was frequently used as a trafficway. Under these circumstances, the persons who were accustomed to cross the track had reason to expect a signal from the train, in approaching the crossing. It has been shown that when the accident occurred there were trees and growing cane around the track which considerably obstructed the view.

The canes were quite tall and the trees also. There was some conflicting evidence as to the visibility of the train when a person went upon the grade crossing, but the jury weighed the evidence and, in our opinion, it has been established that the view was quite obstructed.

We have already cited the case of *Ferrer & Son* v. *American R. R. Co.*, *supra*, where, notwithstanding the fact that the crossing involved was not entirely a public one, it was held that it was the duty of the railroad company to give a signal and to use ordinary care.

In *Chesapeake & O. Ry. Co.* v. *Young's Adm'r*, 146 Ky. 317, 142 S. W. 709, 712, the Court of Appeals of Kentucky expressed itself as follows:

"'As to public crossings, it is the duty of those operating railroad trains to anticipate the presence thereon of persons traveling the highway, and for that reason there is a statutory requirement that signals must be given of the approach of trains to such crossings attended by a proper slackening of their speed.

"In *L. & N. R. R. Co.* v. *Engleman's Adm'r*, 135 Ky. 515, 122 S. W. 833, we said of the duty of railroad companies with respect to private crossings: 'The railroad company may run its trains at such speed as it pleases over private crossings, and that it is not required to give notice of the approach of the trains to such crossings, unless it has been customary for the signals to be given and they were relied on by persons using the crossing. (Cases cited.) On the other hand, it has been held that where it has been customary for signals to be given for the approach of trains to a private crossing, and these were relied on by persons using the crossing, and a traveler on the crossing was struck by reason of the failure to give the statutory signals, a recovery may be had.' "

In *St. Louis–San Francisco Ry. Co.* v. *Ready et al.*, 15 F. (2d) 370, the Circuit Court of Appeals for the Fifth Circuit expressed itself thus:

"The sole question is whether defendant owed any duty to a person using the railroad crossing. Ready was not a trespasser or licensee, but an invitee. He had a right to be where he was, and it was the duty of the railroad company to give reasonable notice and

warning of the approach of its train. Evidence of the frequency of use of a private crossing put in by others than the railroad company affected if material to show that such railroad company had notice and acquiesced in the use; but where as here, a railroad company itself establishes the crossing, it has notice and knowledge of existing conditions, and is bound to use reasonable care to keep from injuring any persons, whether few or many, who may have occasion to use such crossing.''

In the case of *Hinkle* v. *Richmond & D. R. Co.*, 109 N. C. 472, 13 S. E. 884, decided by the Supreme Court of North Carolina, the following was said:

''In the absence of statutes regulating the time and manner of giving signals, the failure of an engineer in charge of a locomotive to ring the bell or sound the whistle on approaching the crossing of a public highway or a point where the public have been habitually permitted to cross, as at the intersection of a mill-road or a farm road frequently used, is evidence of negligence to be submitted to the jury. (Citing cases.)''

In *Hartman* v. *Chicago G. W. Ry. Co.*, 132 Iowa 582, 110 N. W. 10, 11, the Supreme Court of Iowa said:

''But it is claimed in the case at bar that in any event there was no evidence of negligence on part of defendant, and therefore a verdict in plaintiff's favor could not be upheld. Such is not our conclusion from the record presented. It is true that the crossing upon which the accident occurred was not upon a public highway, and therefore, if it is to be considered merely as a private crossing, no statutory duty rested upon the defendant to sound the whistle in approaching it. (Citing case.) Nevertheless, the defendant was charged with the common-law duty to take notice of the location and surrounding of its private crossings, and if, in view of such circumstances, reasonable regard for the safety of persons rightfully using such crossing required the sounding of the whistle or the ringing of the bell or the use of other proper precaution or warning, then the failure so to do would be negligence. Moreover, where the railway company obstructs and prevents the use of the highway crossing, and thereby knowingly diverts the travel to a private crossing in the same vicinity, we think that, so long as this condition prevails, the latter crossing is to be so far treated as public as to require the use of statutory signals by approaching trains. There is also, as we have

before noted, evidence that the defendant company had in fact been in the habit of observing this precaution, and the failure so to do on the morning of the accident, if established, tended materially to sustain the plaintiff's charge of negligence."

Apart from the Puerto Rican statute which compels the railroad companies to provide their locomotives with bells and whistles which shall be used upon approaching curves, tunnels, and road or street crossings, the above-cited jurisprudence would suffice to sustain the verdict in the instant case. In view of the evidence introduced, we must reach the conclusion that the railroad company as well as the defendant had full knowledge that the crossing where the accident occurred was used with some frequency as a trafficway.

The giving by the court of the following instruction to the jury is claimed as a fourth error:

"So that those are the considerations which the jury should take into account in passing upon the negligence on the part of any one in this case; and the court, it repeats, means to say that it is not enough that Crescencio Ramos should have been negligent, but that his negligence must have been such as to constitute the only cause of the death, because if that was not the only cause of the death and the negligence of the engineer of the train also was the cause of the death and of the collision, he may be found guilty of the collision and of the death of Crescencio Ramos."

The court *a quo* did not commit the error attributed to it. In the case of *People* v. *Frances,* 19 P.R.R. 659, this court held that in order that the negligence of the deceased may constitute a complete justification and totally exonerate the accused from responsibility, it must be of such a nature as to convey to the mind of the judge the conviction that such negligence was more than contributory and was the sole cause of the accident.

In the fifth assignment it is claimed as error that the court *a quo* refused to give to the jury the following instruction:

"The court instructs the jury that in order to support the information in the present case and to authorize a verdict of guilty it is incumbent on the prosecuting attorney to prove a degree of negligence on the part of the accused greater than that which would be necessary to support a civil action for damages."

The instructions of the court were sufficiently clear and correct in connection with the degree and the kind of negligence required to be proved against the defendant. It was not necessary to give the instruction requested. Criminal negligence is a question of degree which is not susceptible of precise definition. Therefore, instructions should not be given to the jury which, although in agreement with the principles of the law, may create confusion in the minds of the jurors, especially where the court has given ample instructions protecting the rights of the defendant.

It is also contended that the court erred in refusing the following requested instruction:

"There is no doubt that the defendant had a right to run the engine he was driving at any speed, there being no statute regulating the speed at that place and there being no showing from the information, nor from the evidence introduced in the case, as to any fact or circumstance making it incumbent on the engineer to run at a lower rate of speed than that at which his engine was going immediately before the occurrence."

In view of the attendant circumstances of this case, we think that the court acted correctly in refusing to give the instruction above transcribed.

The judgment appealed from must be affirmed.

### ON MOTION FOR REHEARING

May 27, 1936

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

The defendant in an extensive and interesting brief moves for a reconsideration of our judgment, and insists that the information does not state facts sufficient to charge a crime,

and that although he raised the question that the bill of particulars filed by the district attorney is not a pleading and does not cure the principal defects in the information, this court has failed to make any pronouncement on the latter question, for which reason, the defendant states that ''we are in the same position that we were before we submitted the case to the final decision of this Honorable Court.''

Counsel for defendant says that as an attorney engaged in the active practice of his profession, he is interested in having it decided what is the effect and consequence in this Island of Puerto Rico of filing a bill of particulars respecting an information which he considers as insufficient, this being the reason which leads him to ask for a determination of the question raised by the appellant in his original brief.

■ The learned counsel maintains that his contention that the information, whether considered by itself or jointly with the bill of particulars, is insufficient, seems to have been misapprehended by this court. We think that counsel is the one who does not seem to have understood the opinion of this court, because we are not bound to decide whether or not a bill of particulars in a criminal case may be considered as an amendment to an information, where we have concluded that said information states facts sufficient to charge a public offense. In the opinion delivered by us we held that the information which served as a basis for the evidence introduced is sufficient to charge the offense, and in discussing the question raised by defendant we further said:

''According to the defendant, it should have been specifically stated in what consisted the alleged negligence, carelessness, or lack of circumspection attributed to the defendant. It is further urged that, as a general rule, the information is sufficient if it follows the wording of the statute, but that in the present case the use of such language is not sufficient. It is contended that in an information against a chauffeur it is sufficient to allege that due to the gross negligence or carelessness of such chauffeur a collision occurred, because automobiles travel over the public highways and the mere fact of so traveling establishes an obligation or duty owing from the

driver to the pedestrian, which is not the case where the locomotive is operated on land belonging to the railroad company. In the instant case, according to the defendant, it was necessary to allege the existence of a public crossing or the concurrence of facts upon which arises the obligation or duty owing from the engineer to the person injured. This question was settled by us in the case of *People* v. *Rodríguez*, 47 P.R.R. 565, where we cited authorities holding that where a defendant is informed of the nature of the offense he is called upon to answer, it is unnecessary to set out in detail in what the negligence charged against him consisted. In *State* v. *Watson*, 216 Mo. 420, 432, 433, cited by us with approval in the above case, the following was said:

" 'It was not, in our judgment, essential that the information should undertake to set out in detail in what such carelessness, recklessness and culpable negligence consisted, but the charge that he operated and propelled this automobile along a public street carelessly, recklessly and with culpable negligence was in effect notifying the defendant that he was not using, operating or propelling his automobile in accordance with the law or the ordinances of the city regulating the use and operation of such machines.

" 'Manifestly the defendant knew that he would have to meet the charge of carelessness, recklessness and culpable negligence in the operation of his automobile, and in meeting such charge doubtless his only defense would be that he operated and propelled such automobile in accordance with the laws and ordinances of the city, duly passed, regulating the running of such vehicles. The defendant could not have been misled by this charge. He could not have been taken by surprise. Under the allegations in this information he must have known that the State would undertake to develop every fact which tended to establish any sort of negligence, carelessness or recklessness in the operation of that machine.'

"The information charges that the engineer was driving the engine with such negligence, carelessness, and lack of circumspection that the said engine collided with an oxcart, with the result that Crescencio Ramos, a human being, was gravely injured and died almost immediately in consequence of the injuries received. The information practically uses the language of the statute. It is true that it is not alleged therein that the engineer suffered or caused the engine to collide with the oxcart, but the equivalent language is used showing clearly that the negligence, carelessness, and lack of circumspection in operating the engine produced the collision which occasioned the accident."

After establishing the above conclusions we said that "furthermore," that is, in addition to the allegations set forth in the information, "in the bill of particulars, produced on motion of the defendant, it is stated that the negligence, carelessness, and lack of circumspection on the part of the defendant consisted in driving the locomotive at great speed and in failing to reduce such speed on approaching the place of the accident, and in not sounding the whistle nor the bell before reaching the said place, blowing the whistle almost at the moment the engine collided with the oxcart driven by Crescencio Ramos."

■ In our opinion, the question has been decided. However, counsel for the defendant urges us to overrule the doctrine established by this court regarding the allegations that an information in cases of wrongful death should contain. We agree that there are courts which hold that when the death is caused by omission of duty or negligence all the facts and circumstances essential to show the negligence must be alleged in the information, but also there are courts which hold that when the acts of the defendants are alleged, the information is sufficient and there is no need to state in detail in what the negligence consisted. In general, an information is sufficient if it informs the defendant of the nature of the offense with which he is charged. In our opinion, this last doctrine is the correct and just one, as it simplifies and aids the ends of justice without impairing the rights of the defendant. This is the trend of the more recent decisions, especially in those states having laws of criminal procedure analogous or similar to ours.

In the case of *State* v. *Gondeiro*, 82 Mont. 530, 268 P. 507, the defendant demurred to the information on the ground of want of facts to charge a public offense. There the information charged that defendant with having, on or about August 14, 1927, in the country of Cascade, in the State of Montana, and before the filing of the information, committed the crime

of manslaughter, in that the said defendant, did wilfully, un-lawfully, knowingly, and feloniously kill one Mary Bykari, a human being, contrary to the form of the statute, etc. These were the only facts alleged against the defendant, who, while driving a car, killed a person who was riding in the same car, by reason of a collision with another car which was traveling in an opposite direction. The Supreme Court of Montana, in a very interesting and carefully-written opinion, held that the information was sufficient. Following are some of the grounds on which the court sustained the information:

"As every student of law knows, one accused of crime was greatly restricted in his defense by the early laws of England. Because of this, solicitude for the accused brought into existence the common-law system of criminal pleading under which it was deemed neces-sary to state the offense charged with the greatest particularity. This was done sometimes to the point of absurdity. The reason given for the requirement was that the defendant might be fully informed as to the case against him to enable him to prepare for his defense. Availing himself of the technicalities provided by law, the criminal altogether too frequently went unwhipped of justice. He took ad-vantage of the rules provided for his protection, and made the ad-ministration of the law little better than a public scandal. For cen-turies the system 'aided criminals in escaping the penalty of crime, to the great reproach of the law, without affording any assistance in the administration of justice.' *People* v. *Cronin,* 34 Cal. 191. Illus-trating this, the Supreme Court of California, in *People* v. *King,* 27 Cal. 507, 87 Am. Dec. 95, said:

" 'Under the pretense of informing the defendant of the nature of the charge against which he was called upon to defend, it was necessary, at the ancient common law, to describe the means by which the homicide was committed, and the nature and extent of the wound and its precise locality; from which it necessarily fol-lowed that a trifling variance between the proof and the allegation frequently defeated a conviction, no matter how manifest the guilt of the defendant.'

"To obviate this condition, the English Parliament over 75 years ago passed an 'Act for further improving the administration of criminal justice.' Section 4 thereof provided that in any indictment for murder or manslaughter 'it shall not be necessary to set forth

the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, wilfully, and of his malice aforethought kill and murder the deceased, and it shall be sufficient in every indictment for manslaughter to charge that the defendant did feloniously kill and slay the deceased.' 14 & 15 Vict. C. 100. A similar statute has been enacted in several of the United States. Over 60 years ago the Supreme Court of California, in *People* v. *King, supra,* said:

" 'A disposition to relax much of the ancient strictness in criminal proceedings has manifested itself in modern practice, and in harmony therewith the Legislature of this state has substituted in the place of the old, a new system of practice and pleading, which retains all the elements of the former so far as they are made necessary by a due regard for the substantial rights of a defendant, but discards all such elements as serve no good purpose, and only tend to embarrass and defeat the administration of justice. That system provides a few plain and simple rules by which to determine the sufficiency of pleadings, and declares that such rules shall be the test. Section 235.'

"Section 235, cited in the opinion, was reenacted as section 948 of the Penal Code of California. We borrowed it from California, and it appears in our 1921 Revised Codes as section 11841."

The section above cited, which is in force in California, Montana, Idaho, and other States, is equivalent to section 66 of our Code of Criminal Procedure, and reads as follows:

"All the forms of pleading in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this code."

The importance of this section in the state codes lies in the fact that, according to its provisions, the rules prescribed by the code are the ones by which the sufficiency of pleadings in criminal causes must be determined. Such rules are embodied in sections 66, 71, 72, 75, and 82 of our Code of Criminal Procedure and in the corresponding sections of the codes of California, Idaho, and Montana. It goes without saying that the old rules are not binding on us, for obvious reasons, and because we must apply the provisions of the Code of Criminal Procedure.

In *State* v. *Gee*, 48 Idaho, 688, 248 P. 845, the Supreme Court of Idaho also says that the provisions embodied in section 8823 of the Compiled Statutes of said State were adopted for the purpose of abrogating the strictness of 'the common-law form of indictment. This Idaho case is very interesting. It studies and analyzes sections 8214, 8823, 8825, 8826, 8827, and 8834, of said Compiled Statutes, the first one of which is equivalent to section 203 of our Penal Code and the succeeding ones to sections 66, 71, 72, 75, and 82 of our Code of Criminal Procedure. In said case the defendant, who was driving a car, struck and killed one Harry Tage. The defendant was charged with manslaughter, it being alleged in the information that—

"Charles H. Gee of Boise, Ada County, Idaho, on or about the 9th day of March, 1928, in Boise, County of Ada, State of Idaho, then and there being, did then and there, willfully, unlawfully and feloniously kill one Harry Tage, a human being. All of which is contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the State of Idaho."

The defendant recognized "that informations in the State of Idaho couched in the language of the statute are held sufficient but he strenuously urges that where the state is prosecuting a charge of voluntary manslaughter, and relies upon violations of statute or commission of negligent acts, the information must set forth the manner and means of the commission of the homicide." The Supreme Court of Idaho sustained the sufficiency of the information, in the following terms:

"It may be conceded that a majority of the courts in this country, under the same or similar statutes, sustain appellant's position. It is likewise apparent that the modern trend of judicial decision, evidenced by the opinions of this court above cited and the opinions of the highest tribunals of sister jurisdictions, is all toward a simpler, shorter form of indictment or information in criminal prosecutions. (Citations.)

"Mr. Chief Justice Gallaway of the Supreme Court of Montana, in a well-reasoned opinion (*State* v. *Gondeiro,* 82 Mont. 530, 268 P. 507, 509), sustains an information for manslaughter, under Mont. Rev. Codes 1921, sec. 10959, in a case where the facts were somewhat similar to those in the case at bar. . . .

"Before our C. S. sec. 8214, was amended in 1921, *supra,* it was in the same language as Mont. Rev. Codes, sec. 10959, defining manslaughter, both being identical with the California statute defining the same crime. Our present statute is substantially the same as the Montana section referred to, and Mont. Rev. Codes 1921, sec. 11841, 11842, 11843, 11844, 11845, 11852, and 11853, are practically identical with our C. S. secs. 8823, 8824, 8825, 8826, 8827, 8834, 8835. The opinion in the Montana case is therefore of great persuasive force.

"If appellant had been simply charged with murder, and under proper evidence was convicted of manslaughter, the murder charge would sustain such conviction. (Citations.) Upon a charge of voluntary manslaughter, a conviction of involuntary manslaughter under statutes like ours, has been sustained. *People* v. *Pearne, supra.* And in any event, if defendant was not sufficiently informed by the terms of the information as to the charge he was required to meet, in a proper case he might demand a bill of particulars. While the right to do so is not recognized by our statutes, this court has held that a defendant would be entitled to such a bill in the sound discretion of the trial judge. . . .

"The information substantially conforms to the requirements of C. S. sec. 8834, and other sections of the Penal Code referred to herein, and it does not appear that appellant has been deprived of any substantial right by being required to plead thereto."

Section 203 of our Penal Code, which defines the crime of manslaughter, both voluntary and involuntary, is identical with section 10959 of the Revised Codes of Montana and substantially similar to section 8214 of the Compiled Statutes of Idaho. And section 8834, to which the Supreme Court of Idaho refers in the last paragraph of the opinion which we have just copied, is substantially the same as section 82 of our Code of Criminal Procedure, subdivision 6 of which says that "the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language,

without repetition, and in such manner as to enable a person of common understanding to know what is intended.''

The decisions already cited are enough. We think it is unnecessary to invoke the decisions of other state courts which hold the same doctrine. In some of them it is stated that it is not necessary to charge defendant's duty in the premises, nor to allege culpable or any other degree of negligence *eo nomine,* nor to set out defendant's acts in any other than general terms and as ultimate facts. To state more as to the latter would be to plead the evidence. *State v. Lester,* L.R.A. (N. S.) 1915 D. 201. Other decisions hold that the allegations of the indictment are sufficient when they put the defendant on notice that he was charged with killing the deceased by striking him with an automobile, driven in an unlawful, wilful, careless, and negligent manner. *Madding* v. *State,* 177 S. W. 410, 412.

The defendant, however, insistently maintains that those decisions are inapplicable to cases of wrongful death caused by a railroad company. We are unable to see the distinction. The provisions of the Code do not authorize the making of any distinction between an information for manslaughter filed against a locomotive engineer and one brought against the driver of an automobile. The same rules should be applied in both cases. The decisions which uphold the doctrine followed by this court are based on statutory law and cover all kinds of indictments or informations wherein the death of a person by reason of the culpable negligence or carelessness of another is charged.

Ratifying the conclusions set forth in our former opinion, we uphold the sufficiency of the information in the present case, where, as we have said, it is alleged that Carmelo Pagán wilfully and unlawfully and while driving in his capacity as engineer a railway engine, acted so carelessly, negligently, and with such lack of circumspection that the said engine collided with an oxcart, with the result that grave injuries were inflicted on Crescencio Ramos, a human being,

who died in consequence thereof almost immediately after the accident.

■ As to the question raised by counsel for the defendant in regard to the bill of particulars, we wish to state that the adjudicated cases maintain that the defects in an information are not cured by the fact that such a bill of particulars has been filed to give more information to the defendant. Almost all the cases examined by us refer to indictments, and some of them to that form of accusation which in American legal terminology is known as "information." There is some difference between the charges made by a grand jury by means of an indictment and those made by a prosecuting attorney by means of an information. In the former case the prosecuting attorney can not amend the charges made by the grand jury; in the latter case he is empowered to amend the information. Can this be made through a bill of particulars? This is a question on which we do not desire to pass at this time. It is clear that the prosecuting attorney can not correct the defects in an indictment by means of a bill of particulars, charging new grounds, upon which the grand jury has not passed. (*State* v. *Williams,* 14 Tex. 98, 129.) However, there are courts which hold that a bill of particulars even when filed by the district attorney, can not have the effect of amending an information. (*State* v. *Long,* 129 La. 777, 56 So. 884.) Although this holding of the Supreme Court of Louisiana may be correct in that jurisdiction, we refrain from expressing any opinion regarding that question because we think that the same should be decided when it becomes necessary to do so, after a careful study and consideration.

There are some other points argued by the defendant in his motion for rehearing which we do not deem it necessary to consider, as they raise no new questions and in our opinion do not require any further discussion.

The motion for rehearing must be denied.